*IN ERROR.*

•••••

**ALBANY,**
March, 1814.

SPENCER
v.
SOUTHWICK.

AMBROSE SPENCER,      *Plaintiff in error,*

against

SOLOMON SOUTHWICK,      *Defendant in error.*

THIS cause was brought before this court on a writ of error from the supreme court.

It was an action for a *libel*, and judgment was given in the court below, on a demurrer to the replication.

For a statement of the pleadings, and the judgment of the court below, see vol. 10. p. 259. of these reports, and also the same case, on a demurrer to the plea, vol. 9. p. 314.

*Woodworth*, for the plaintiff in error, contended that the libel set forth contained three distinct charges of matter libellous, but that the plea answered one only:

1. That the plaintiff effected the incorporation of the *Manhattan Bank*, by hypocritical cants and deceptive practices.

2. That, at the time, the plaintiff had an existing interest in the incorporation.

3. That the plaintiff attempted to deceive the public by hypocritical cants, &c. in the *prospectus* of *Brown's* newspaper, of which the plaintiff was alleged to be the author.

1. The libel does not charge the plaintiff with omission of his duty, as is set forth in the plea, but with committing acts of *deception*, in effecting the incorporation of the bank; and to establish this charge, the libel sets forth the plaintiff's alleged pretence of religion, in order to effect his objects, as in the preamble to the act of incorporation, and the defendant adds, "the deception succeeded." He proceeds further to say that the same deception may succeed in the circulation of a newspaper, most clearly showing that the defendant *meant* to charge the

*[marginal note:]* To a declaration for a libel, charging that by hypocritical cants, &c. the plaintiff and his associates effected the incorporation of the *Manhattan Bank*, in which the plaintiff's share of the profits was several thousand dollars, and that the plaintiff, as a member of the senate, advocated the bill entitled "An act for supplying the city of *New-York* with pure and wholesome water," knowing that it contained a clause authorizing the company to carry on banking business, and when he knew that the other members of the legislature were ignorant of that fact, &c. the defendant pleaded in justification that the plaintiff was a senator, &c. on the 2d of *April*, 1798, that such a law was passed, and averred that at the time of

passing the said law, to wit, the 1st of *April*, 1798, the plaintiff, as senator, advocated and supported the bill, knowing at the time that it contained such clause, &c. and that a large majority of the other members of the legislature were ignorant of that fact, &c. and that at the time and place first above mentioned, the plaintiff held and was owner of a large portion of the stock created by the said law, to wit, 5,000 dollars, &c. all which acts of the plaintiff were hypocritical and deceptive, and contrary to his duty as senator, &c. The plaintiff replied that at the time he advocated the said law, as a senator, he did not hold, and was not owner of any stock created by it, nor had he any interest whatever in the stock, &c. To this replication the defendant demurred, and judgment was given in the supreme court in favour of the demurrer, and on a writ of error being brought into this court, it was held that the plea was bad, as not being an answer to the declaration, and that the first fault in pleading having been committed by the defendant, the plaintiff was, consequently, entitled to judgment.

plaintiff with *actively* practising deception, and not merely with an omission to give information to the senate. An omission of a duty can never justify a charge of an act of commission or of practising deception or fraud.

2. The bare reading of the libel manifestly conveys the idea that the plaintiff held some interest in the bank, *at the time* of effecting its incorporation; the fact of interest in the bank, and deception in promoting its incorporation, are stated as concurrent in point of time. The mention of *profits*, also, shows further the charge of an existing *interest*, without which there could be no profits. To say that the defendant did not charge or mean to charge the plaintiff as having an existing interest in the bank, is to say that he acted *basely*, but disinterestedly, or without motive. But further, this meaning is illustrated by the defendant's subsequent remark in his libel, that *this deception* (that is, in the *prospectus* to the newspaper) will not put so much money in the judge's pocket as in the case of the bank. Here the charge is clear and explicit, that *money* was the motive of the plaintiff for voting for and advocating the incorporation of the bank. Such seems to have been the understanding of the charge by the court below, when the cause first came before them on a demurrer to the plea, for the Chief Justice states this to be the *gist* of the libel.

3. There is a distinct charge in the libel, which is not taken notice of nor answered by the plea, that is, the assertion of *deception* in the prospectus to *Brown's* newspaper, of which the plaintiff is held up as the author. This was clearly libellous, as being contumelious, and calculated to bring the plaintiff into contempt.* This the defendant, in his plea, has not attempted to answer. If a plea, professing to answer the whole declaration, answers only to part, it is bad on demurrer.† If, then, there be more than one libellous charge, there ought to have been judgment for the plaintiff on the demurrer, for it is an established rule, that, on demurrer, judgment must be given against the party who commits the *first* fault in pleading.

There is no answer in the plea to the *second* and *third* charges which have been distinctly stated. The plea only answers, by saying the plaintiff *omitted* to inform the senate of what he knew the senate were ignorant, and that he owned stock in the bank. The court below considered this an answer to the *first* charge of hypocritical cants, &c. in the preamble to the act. If

*3 *Wils.* 403.
1 *Bos. & Pull.*
331. 9 *Johns.*
*Rep.* 215.
† *Cro. Eliz.* 174.
1 *Chitty's Pl.*
510.

it is a neglect of duty for a member of the senate not to rise and discuss a measure proposed; but it is quite different from committing positive acts of deception, as charged in the libel; and proof of a mere neglect of duty can never justify a charge of a positive commission of an improper act.

There is nothing material in the plea, except the charge of having an interest in the stock *at the time.* This was all, if proved, that could justify the libel, and on this point the plaintiff was willing to join issue. The defendant then takes the new ground of an interest existing subsequently, in *April,* and the plaintiff then tendered an issue on this only remaining fact, and the defendant demurred.

The court below, on considering this demurrer, assume this new position, and do not understand the plea as importing an *existing* interest at the time the plaintiff advocated the act of incorporation, and decide that the plea does not necessarily put the point in issue.

A replication must not be multifarious, but must tender an issue upon a distinct and material fact.* This the plaintiff has done. He tendered an issue on the only material fact in the defendant's plea, unless the *day* or *time* in *April* is material. The essence of the plea being, that the defendant had an interest at the time of passing the act, the day in *April,* mentioned in the plea, was not material. If *time* or *place,* when not material, are traversed, the opposite party may demur.†

* 1 *Saund.*
338.  1 *Burr.*
317.  1 *Wils.*
339.  3 *Caines'*
*Rep* 160.

If the day in *April* was material, then advocating the incorporation of the bank could not be criminal, or justify the libellous charges ; and if the day is immaterial, then the replication is good.

† 1 *Chitty's Pl.*
587.  1 *Johns.*
*Rep.* 457.  2
*Saund.* 318. *n.*
6.

*Foot,* contra, contended that the third charge, stated by the counsel for the plaintiff as contained in the libel, was not a subject for the consideration of this court, for the court below took no notice of any such charge. The plaintiff complained only of being libelled as a *senator,* and in regard to his conduct, in relation to the incorporation of the *Manhattan Bank.* Still, if this third charge could be examined here, it is impossible to make out that the defendant has charged the plaintiff with being the author of the prospectus. It is only that from the similarity of the cants used, in getting the bank incorporated, and

in establishing the newspaper, that the defendant says, the plaintiff may be considered as the author. Where a charge is made with reference to the ground of the charge, if the ground stated contains no libellous matter, then the charge, by reference or relation to it, cannot be libellous.

The only charge, then, made by the defendant against the plaintiff, is that of hypocrisy and deception, and speculation or receiving profits from such deception. The very preamble to the extraordinary bill incorporating the *Manhattan Company*, and the short and unusual clause, whereby a banking power is given, sufficiently show the hypocrisy and deception practised. The words in the pleading, that the plaintiff had no actual or existing interest in the bank, until the day named in *April*, and not denying his having knowledge of the effect of the banking clause, or of his having shares when the bank went into operation, clearly admits that a *prospective* interest existed.

By *existing interest* is not meant profits, or a benefit received at the time the plaintiff was endeavouring to effect the object and secure the profits; but that profits or benefits had accrued to the plaintiff some time before the charge; that the plaintiff had received profits or benefit, in consequence of his management, in regard to this incorporation.

The plea contained two propositions: 1. That the plaintiff had good reason to believe that his fellow senators did not know of the banking power contained in the bill; and, 2. That the plaintiff well knew their ignorance. The plaintiff had an opportunity of traversing both these facts, but he thought proper to demur.

The replication sets forth, that, at the time of advocating the bill, the plaintiff did not own any stock created by that bill; a fact which no person ever imagined, and which was impossible. If the replication had stated that the plaintiff had no interest or expectation of interest, in regard to stock to be created by the bill, it would then have presented a proper issue. As it stands, the defendant was obliged to demur to it.

*T. A. Emmett*, in reply, insisted, that from the tenor of the whole libel it plainly conveyed the idea that there was, at the time the plaintiff advocated the bill, some *interest*, whether stock or any other thing, made no difference, which became fixed and certain, by the very act of passing the bill, and from which the

IN ERROR.
....
ALBANY,
March, 1814.

profits were, by that act, to be realized. What the defendant charged, in respect to the *prospectus* of *Brown's* paper, independent of the other parts of the publication, was, of itself, a gross libel: and the charge of *hypocritical cants* was clearly a libel.* To the declaration, the defendant has put in no *general issue*, though his plea purports to be an answer to the whole. It takes no notice of the charge, as to the *prospectus* of *Brown's* paper, or that of " hypocritical cants."

SPENCER
v.
SOUTHWICK.
* Hicks's Case,
Hob. 215.

Again, the plea does not set forth that the plaintiff, or that he and his associates, did effect the incorporation of the bank. Nor is it pretended in the plea, that the plaintiff was, in any way, concerned in framing the *preamble,* in which only, it is alleged, the *hypocritical cants* are to be found. There is, then, a justification on the ground of *concealment,* when there is no such concealment mentioned in the libel complained of.

Again, the plea contains a *negative pregnant;* as it is averred, that the plaintiff did not *publicly* make the banking power in the bill; thereby leaving it to be inferred that he did it *privately,* or to some of his friends; which would not justify the charge of hypocritical cants or concealment of the powers contained in the bill.

Forbearing to proclaim, or make known publicly, all the powers and effects of a bill, does by no means imply neglect of duty, much less misconduct. · It may often be not only proper, but commendable, to forbear mentioning all that a person knows or believes with respect to a proposed measure.

The averment in the plea is not susceptible of a reply. That the plaintiff " had good reason to believe, that he well knew that a large majority," &c. is so loose and uncertain, that no issue could be joined on it.

But the principal point is the charge of *interest;* and that the interest imputed in the' libel was *existing* at the time, is the opinion of the court below. (10 *Johns. Rep.* 259.) Nay, the perusal of the libel suggests an *interest,* either existing in fact, or in expectation or promise, at the time; and this is the cause of the action brought by the plaintiff. But the plea has fixed the interest as existing at the time. It avers no expectation, or any interest in prospect; and no issue could be taken on that averment. This course of pleading clearly fixes the meaning of the libel to be a charge of an existing interest, at the time of advocating the bill; for it must have meant one kind of interest

IN ERROR.
.....
ALBANY,
March, 1814.
SPENCER
v.
SOUTHWICK.

or the other. Besides, if no interest was charged in the libel, no criminality could be implied.

On the demurrer to the plea, (9 *Johns. Rep.* 316.) the opinion of the supreme court was, that the charge in the libel was of an existing interest at the time. On the demurrer to the replication, afterwards, (10 *Johns. Rep.* 259.) the court decided, that such interest was not *necessarily* to be inferred from the libel. This was unfortunate for the plaintiff, who, having pursued the decision of the court on the first demurrer, was met by a contrary opinion on the second. This difference of opinion was founded on the difference between the 1st and 2d days of *April.* That was immaterial. The fact was laid under a *videlicet ;* and the time was not traversable; no issue could arise on the day. If the point, or material matter, is pleaded directly and clearly, it is good, without days or *particular* times. The mention of the time of passing the law is certainty to a common intent, which is sufficient. The words, "when the law was passed;" "at the time of passing the law," must mean the same thing as to the time.

As to the impossibility of the plaintiff's having an interest in the stock created by a law not yet passed, there is nothing so very absurd in the idea. It is proper, and usual, for the applicants for such a bill to say, that they have an interest in the stock to be created by it, whether the bill succeeds or not; and those who advocate the bill might have the same interest.

In any event, however, the plaintiff in error must succeed; for, if the averment be as he conceives it, the demurrer to the replication is not well taken ; and if it be as the defendant supposes it, then the *plea* is bad, and the plaintiff must have judgment.

The CHANCELLOR *(Kent)*(a) said, that as this cause must be decided on the grounds discussed in the supreme court, when he presided in that court, he should decline giving any opinion here ; nor should he give any opinion in any cause decided before him in that court.

LEWIS, Senator, was of opinion that the judgment of the supreme court ought to be reversed.

(a) He was appointed chancellor the 25th of *February,* 1814.

IN ERROR.
...
ALBANY,
March, 1814.

SPENCER
v.
SOUTHWICK.

SANFORD, Senator. The allegations of the parties having terminated in a demurrer, the sufficiency of each one of the pleadings is drawn in question. The pleadings must, therefore, be examined; and the first of them which shall be found to be insufficient, must determine the cause against the party whose allegation it is.

The action is for printing and publishing a libel, which is set forth in the declaration. The first step, in the consideration of the cause, will be to fix, as clearly as may be, the true sense and meaning of the libel.

The libel appears to me to contain two accusations against the plaintiff. One is, that while he was a member of the senate, he, with others, deceptively effected the incorporation of the *Manhattan Bank;* by which he made a pecuniary profit to himself. The other is, that the plaintiff was the father, or author, of a certain public prospectus, which contained an assurance that a considerable portion of a newspaper, therein mentioned, should be devoted to the support of religion, and that this assurance was hypocritical and deceptive. In fewer words, one is a charge of corrupt conduct in the plaintiff, as a senator, and the other is a charge that he attempted to deceive the public, in respect to a certain newspaper. For the purpose of reference, I will denominate the former the first, and the latter the second charge.

How far are these charges connected, and how far are they distinct?

It is said, that the charge that the plaintiff was the author of the deceptive prospectus, is stated merely as an inference, resulting from facts which are alleged; and hence, that the second charge is absorbed, or embraced, in the first. This construction is not the sense of the libel. The obvious meaning of the writer is, to declare that the plaintiff was the author of the prospectus. It is true, that this charge is not expressed in such terms as might be used in stating the fact in an indictment; but it is clear, that by various expressions, and by the tenor of the whole paragraph, the plaintiff is charged to have been the author, writer, or father of the prospectus. It is not necessary to inquire whether this charge might be expressed in terms stronger, or more precise. If the meaning of the writer be clear and intelligible, it is enough. It is the duty of courts of

IN ERROR.
....
ALBANY,
March, 1814.

SPENCER
v.
SOUTHWICK.

justice to understand libels as they are understood by the rest of mankind. I cannot read this paragraph, without understanding the writer to mean that the plaintiff was the author of the deceptive prospectus. Indeed, the main object of the paragraph appears to be, to declare that he was the author. It is true, that the plaintiff's conduct, in respect to the *Manhattan Company*, is represented as an argument in support of the writer's assertion concerning the prospectus. This argument, considered as a deduction from premises, does not appear to be at all a necessary inference, since a man may practise hypocrisy and deception in one instance, and not in another. But the second charge is not stated, simply, as an inference resulting from the first. It is clearly stated, as a fact, that the plaintiff, as the father of the prospectus, had, in that respect, practised hypocrisy, and attempted deception.

The conduct of the plaintiff, as a senator, is stated as a fact, which had happened long before his deceptive prospectus. The incorporation of the *Manhattan Bank*, and the acts of the plaintiff, in respect to that company, are facts which have no connexion with his attempt to deceive the public, on the subject of the newspaper. It is charged, indeed, that hypocrisy and deception had effected the incorporation of the *Manhattan Company*, and that they were again employed to effect another object. But the occasions upon which hypocrisy and deception are alleged to have been practised, and the purposes for which they are charged to have been used, are totally unconnected and distinct. The transactions alleged to have taken place, are distinct in their own natures, and are separated by time. The two charges appear to be brought together by the writer, for the purpose of illustration, but this conjunction cannot alter the nature of the facts stated. In such a position, the two charges may give shade and colouring to each other, but each has its own body and substance. Such a connexion may aggravate, but it cannot diminish the libellous force of each separate charge.

It may be said, that the imputation against the plaintiff is that of hypocrisy and deception, under pretence of religion. This general statement of the charge would fall far short of the libel. The libel states two particular instances in which hypocrisy and deception, under the pretence of religion, were practised

IN ERROR.
... .
ALBANY,
March, 1814.
SPENCER
v.
SOUTHWICK.

by the plaintiff. The sting of the libel lies in these specifica-
tions. A general charge of hypocrisy and deception would
make very little impression. But when specific instances of im-
posture are distinctly alleged, the world listen with attention,
and form their opinion, not upon general terms of opprobrium,
which may attend the specification, but upon the particular
facts to which their attention is drawn. It is, perhaps, indifferent
to the object of this inquiry, whether the particular facts al-
leged are considered as specifications of a general charge, or
the general charge is considered as a deduction from the par-
ticular facts. In either view, it is evident that the libel consists
mainly and essentially in the particular facts stated.

The object of the deceptive prospectus was to give currency
to a newspaper; but the particular object to be attained by the
newspaper is not stated, and it is stated that it was yet to be de-
termined how far the deceptive attempt would succeed. Hence,
the second charge falls far short of the first in the turpitude
which it imports.

The second charge is, still, clearly a libel. Hypocrisy and
deception, always odious, become so, in the extreme, when reli-
gion is made the pretence. An attempt to deceive the public,
for any purpose whatever, either by matter published in a
newspaper, or by a prospectus, issued from the press, is highly
flagitious; and it is still more so, when the author of the at-
tempt adds impiety to fraud, by assuming the pretence of reli-
gion. Though the two charges against the plaintiff differ in
the degrees of scandal which they import, they are both scan-
dalous, and each of them amounts to a libel, or a libellous ac-
cusation.

In every view, therefore, which I can take of this paragraph,
it appears to me to contain two distinct charges against the
plaintiff, each of which is scandalous and libellous.

I perceive, that what I have denominated the first charge in
the libel, embraces several topics, and may, perhaps, be consi-
dered as constituting more charges than one. The view which
I take of the cause, in its present state, renders it unnecessary
to propose, or to discuss, any such discriminations. The ground
upon which I shall place my opinion is, that the second charge
is plainly distinct from the other matter of the libel, and equally
so, whether the other matter is considered as constituting one

accusation or several. My object has been to define the second charge, and to describe it as distinct from the other matter of the libel.

Such appearing to be the sense of the libel, I proceed to the pleadings. It will be most convenient to examine them in the order in which they took place.

The plaintiff, in his declaration, complains of the whole libel. The libel is recited in the declaration at large, and without selection or discrimination of any particular part; and the plaintiff alleges, that by reason of the printing and publishing of that libel, he has sustained injury. The declaration, therefore, demands redress for every thing contained in it, which may amount to a libel.

The declaration, indeed, appears to put forward the first charge as the principal ground of complaint. It does not, however, state the first charge as the sole ground of complaint. Every thing constituting the second charge is sufficiently alleged; and there is nothing in the declaration which relinquishes the second charge, or confines the plaintiff's demand to the first. Indeed, there is nothing in the declaration which confines the plaintiff's claim to redress to any particular part of the libel. On the contrary, he complains of the whole libel as it is; and, in the concluding part of the declaration, in which it is usual to state, briefly, the injury resulting from the preceding facts, he expressly alleges, that his grievance, in this case, arises from the libel, and libellous matter before stated, comprehending the whole.

The innuendoes, or averments of meaning, cannot vary this view of the declaration. The proper object of an innuendo, is to give certainty to something uncertain in the libel; but an innuendo cannot be used to vary the meaning of the libel, or to give it a construction, where the meaning is clear upon the libel itself. In this case, averments of meaning are applied to the libellous matters, constituting the second charge, as well as to those constituting the first. These averments of the plaintiff are inserted in his declaration for the purpose of giving to the libel formal precision and legal certainty. They are not used, or intended, to restrict the cause of action; nor can they be construed to remit, or relinquish, any thing plainly actionable in the libel. The innuendoes applicable to the first charge cannot, therefore, be considered as limiting, or remitting the right

IN ERROR.
.....
ALBANY,
March, 1814.

SOUTHWICK,
v.
SPENCER

of action resulting from the second charge; especially when the second charge is, itself, attended with other innuendoes, and all which are necessary to give it certainty, and application to the plaintiff.

No objection was made to the declaration at the hearing of the cause. It appears to be in the form usual in such cases, and I consider it sufficient.

. The declaration must be answered by a sufficient plea. As it contains two libellous charges, both must be answered.

The plea, in this case, contains no matter whatever which can be considered an answer to the second charge. The matters stated in the plea relate altogether to the *Manhattan Company*, and the plaintiff's conduct and interest in that affair. There is no answer whatever to the charge that the plaintiff was the father of the deceptive prospectus concerning the newspaper, and that he practised hypocrisy, and attempted to deceive in that respect. The plea contains no answer, direct or indirect, to this charge, and does not even attempt to answer it. The libellous matter constituting the second charge, is, therefore, totally unanswered, and the plea is, for that reason, insufficient in substance.

This objection to the plea being fatal, it is unnecessary to consider the plea as an answer to the first charge, or to examine the replication. My opinion is, that the judgment of the supreme court ought to be reversed, and the cause remanded for farther proceedings.

P. W. RADCLIFF, Senator. Although the parties were at issue in the court below, upon a demurrer to the plaintiff's replication, yet the rule in such case being that judgment must be given *against him who committed the first error*, it is necessary to examine the previous pleadings, in order to determine where the first error lies.

The libel on which the action is founded, charges, (among other things,) in substance, that the plaintiff was guilty of hypocrisy and deception in the performance of his trust as a senator; and that, whilst such senator, he, in conjunction with others, his associates, by means of hypocritical cants and pretences, effected the incorporation of the *Manhattan Bank*. No question is made as to the character of these charges, or

IN ERROR.
.....
ALBANY,
March, 1814

SPENCER
v.
SOUTHWICK.

the construction put upon them by the plaintiff. They are clearly libellous, and they are correctly set forth and interpreted in the declaration.

The defendant undertakes by his plea, to justify the whole; and having done so, he is bound to answer every part that is material, or the omission is fatal. In order to determine whether he has thus answered, in respect to these particular charges, let us ascertain the facts and averments contained in the plea, and relied on for justification. Stripped of such words as, for this purpose, are superfluous, they are simply these; that, at the time in question, and while the plaintiff was a member of the senate, a certain law was passed, the preamble and first section of which are set forth at length; that such law contained a clause authorizing the company thereby incorporated to establish a bank; that the plaintiff, well knowing that it contained a clause of that nature, advocated and supported it; that not more than ten members of the legislature were aware of its conferring any such authority; that the plaintiff well knew that a large majority of the members were totally ignorant of it, and that he did not, " in a public manner, publish and make known to the members of the senate all the powers granted by the said law, as it was his bounden duty, as a senator, to have done."

Which of these facts or averments can be considered as justifying the charges above stated? The only one which has any bearing upon the question is that with which the plea concludes, and to which all the other matter it contains is merely inducement, the omission to disclose to the senate the import of the law referred to. The charges in question, it will be observed, however, are not confined to mere *omission* or *neglect of duty*. They convey the imputation of *positive misconduct*, and require, to satisfy them, something more than simply abstaining from the performance of duty. The neglect or omission of duty may, undoubtedly, under circumstances, be quite as culpable, and involve as much moral turpitude as the commission of crime. But still, the offences are different. To effect an object, as is alleged to have been done in this instance, by hypocritical cants and deception, is surely a very different thing from omitting to do what duty or propriety may require. The one implies actual affirmative agency, the other supposes mere inac-

tion; the one imputes positive fraud, the other, culpable neglect; and, differing as they do in their nature and import, it is impossible that the allegation of one can be supported or justified by proof of the other. Whether, therefore, it was or was not the plaintiff's duty, under the circumstances stated in the plea, to disclose to the senate the fact alleged to have been withheld, a question upon which there would probably be no diversity of opinion, the omission to make such disclosure affords no justification for the allegations which have been made.

It has been argued that the *preamble* to the bill contained the "hypocritical cant," and that, in supporting it with that preamble and the banking clause, consisted the deception. The answer is, 1. That the *preamble* was itself *a part of the bill,* the whole of which (as well the preamble as the rest) the plaintiff is alleged, in the manner ascribed to him, to have aided in carrying through. This cant and deception, therefore, even if the plaintiff had an agency in forming the bill, (which is not averred,) must necessarily have been entirely *dehors the bill,* and have consisted in language and conduct wholly distinct from, and unconnected with, the preamble; and, 2. The plea does not put the defence on any such ground. It merely states the passing of the bill, containing, among other things, the preamble and banking clause, the plaintiff's supporting it, with knowledge of its contents, the ignorance of other members of the legislature, and the neglect of the plaintiff to inform them of what he ought; putting the whole defence, so far as the charges of hypocrisy and deception are concerned, upon the *neglect of duty in not informing.* Neither can the defendant's averment, at the conclusion of the plea, " that all these actings and doings of the plaintiff were hypocritical and deceptive, and contrary to his duty as a senator," remedy the defect; this being merely an inference from the facts previously stated, (of which the court must judge,) and not a substantive allegation of any further fact in justification of the libel. On this ground, therefore, the omission to justify a material part of the libellous matter complained of, the plea is bad, and the plaintiff entitled to judgment.

But, passing by this ground, and admitting for the moment that concealment, or omission of duty, would, if properly pleaded, be a sufficient justification of the charges in question, there

is still a defect in the plea, which, in my opinion, is equally fa‑ tal  It is nowhere averred that the plaintiff did conceal, or omit to disclose the fact, that the obnoxious power alluded to was contained in the bill.   It is merely alleged, that he did not publish and make known " *all the powers* granted to the compa‑ ny by the aforesaid law."   Now, he may, for aught that ap‑ pears in the plea, without publishing *all* the powers granted to the company, have still disclosed and made known the very fact in question; and thus the plaintiff may, in this respect, have been perfectly blameless, and the defendant's plea literally true.    And, again, the averment above mentioned does not even negative the fact of a full and fair disclosure of *all* the powers granted to the company; it merely alleges, that the plaintiff did not, " *in a public manner*, publish, and make them known to the senate ;" thus, not only leaving room for the possibility that he might, in some *other manner*, have made the disclosure, but even, by a negative pregnant, plainly importing that he actually did so.

The plea being, for these reasons, bad in substance ; it is un‑ necessary to examine the replication.

The judgment must, therefore, be reversed, and the cause re‑ manded for further proceedings.

ROOT and HUBBARD, Senators, concurred.

VAN BUREN, Senator.   This is an action for the publication of a libel, brought against the defendant in the supreme court. The declaration is in the usual form, stating the libel, preceding it by appropriate recitals, and accompanying it with the innuen‑ does necessary to its application.   To which the defendant pleaded specially, averring certain facts, and relying on them, when proved, as a justification of the libel.   To this plea the plaintiff demurred, on the ground that it did not answer the charge in the declaration, but avoided it ; and in *October* term, 1812, the supreme court gave a construction to the libel, and decided that the plea was a sufficient answer to it, as they then construed it ; upon which the plaintiff, by the permission of that court, withdrew his demurrer, and replied to the facts set forth in the special plea, according to the construction put upon it by the court below ; and, as he alleges, in the only manner which, by the decision of that court, was left to him. . To this replication the defendant demurred, relying on the ground of its being no answer to the plea, and a departure from the de‑

IN ERROR.
.....
ALBANY,
March, 1814.

SPENCER
v.
SOUTHWICK

elaration. The supreme court, in *August* term, 1813, gave a second construction to the libel, and gave judgment for the defendant. Upon which judgment, a writ of error has been brought, and the cause removed into this court.

To induce the reversal of the judgment, the plaintiff in error contends,

1st. That the replication to the defendant's plea was good in substance; and, therefore, judgment ought to have been rendered for him on the general demurrer thereto.

2d. That if it was bad, still judgment ought to have been given for the plaintiff, on the ground of the insufficiency of the defendant's plea.

And to induce an affirmance of the judgment of the court below, the defendant contends,

1st. That the facts contained in the special plea are a full answer to and justify the libel.

2d. That the replication did not answer these facts, but evaded them, and is therefore bad.

The general rules of pleading, that a plea which professes to answer the whole declaration, must be a full and substantial answer to it ; that the same principle is applicable to replications; and that judgment must be rendered against the party who commits the first error in pleading, are not denied, and the decision of the cause must depend on,

1st. The construction of the libel, and the manner it is charged in the declaration.

2d. The nature and operation of the facts, set forth in the plea, considered as an answer to the libel, and set forth in the declaration.

3d. If necessary, the nature and effect of the allegations in the replication.

These questions, tested by the rules above stated, cannot fail to lead to a correct conclusion.

I have considered the whole case, with the attention which is due to its importance, and the high interest which the parties take in it. I have examined the reasons given by the supreme court, for their respective decisions, with a predisposition to believe them sound, and with a caution and circumspection, due to the distinguished respectability of the source from whence they have proceeded. The result has been, an entire conviction

IN ERROR.
.....
ALBANY,
March, 1814.

SPENCER
v.
SOUTHWICK.

that the two decisions of the supreme court, in this cause, were erroneous.

The libel complained of is as follows : In commenting on a certain prospectus, issued by one *Brown*, to a paper about to be published by him, the defendant uses the following words : " His assurance, that a considerable portion of his paper shall be devoted to the support of religion, &c. excites in my mind strong suspicions. I beg it may be remembered, that by hypocrital cants of this description, Judge *Spencer*, and his associates, effected the incoporation of the Manhattan Bank, of which the judge's share of the profits were several thousand dollars. With this knowledge of the policy of the judge, I cannot but believe, that this assurance is calculated to deceive and impose upon mankind. It is a fact of public notoriety, that when the Manhattan Bill passed the Senate, Judge *Spencer* claimed to be a distinguished member of that body : the preamble of the bill stated, that ' Whereas, by the blessing of God, the introduction of pure and wholesome water into the city of *New-York*,' &c. The deception succeeded, and not more than ten members of the legislature knew that the bill contained a clause that would authorize the company to carry on banking business. It is not a little extraordinary, that a similar hypocritical pretence should be resorted to, for the purpose of giving currency to a newspaper. It is to my mind conclusive evidence, that this artfully deceptive prospectus has a clear right to claim Judge *Spencer* for its legitimate father. Whether this attempt at deception will succeed as well as that in relation to the Manhattan Bank, remains yet to be determined. Of one thing I am certain, it will not put as much money in the judge's pocket. Thus much for the prospectus."

The declaration sets forth the whole libel, and concluding in these words: " Meaning to insinuate and be understood, that, by hypocritical cants and practices, the said *Ambrose*, and his associates, effected the incorporation of the *Manhattan Company* of *New-York*, in which his, the said *Ambrose*, *share of the profits was several thousand dollars*, while he was one of the senators of the state of *New-York*, contrary to his duty," &c.

The construction put on the libel by the plaintiff, is, that it charges him with a violation of official duty as a senator, and corruption, and great depravity as a man, in associating with

IN ERROR.
......
ALBANY,
March, 1814.
——————
SPENCER
v.
SOUTHWICK.

others to effect, and in availing himself of his official situation in effecting, the incorporation of a bank, by hypocritical cants and base deception, and that he not only effected the incorporation of the bank, by those unworthy means, but that he was induced to do so by mercenary considerations, and did it with a view to his immediate personal aggrandizement.

When this cause first came before the supreme court, they deemed it necessary to, and did, give a definition of the libel in the following words : " The *gist* of the libel consists in charging the plaintiff with hypocrisy and want of fidelity in his trust as a senator, in effecting the incorporation of the *Manhattan Company, in which he was largely and profitably interested.* The plea, *in justification of the charge*, states, that the plaintiff was a senator at the time of the passage of the bill, *that he advocated and supported it, and was, at the time, largely interested in its stock, in which he made a great profit.* That he knew that the bill " contained a clause, giving power to institute a bank, and that only a very small proportion of the legislature, not exceeding ten members, knew of that fact, and that the plaintiff had good reason to believe, that he well knew that a large majority of both houses were totally ignorant of the fact, and he did not disclose and make it known to the senate." And in speaking of the plea in this sense, they say, " We cannot perceive any charge in the libel, to which the plea is not a substantial answer, provided the plaintiff's knowledge that the legislature were ignorant of a banking power lurking in the bill, be sufficiently averred."

This construction is in no sense equivocal; it purports to be the deliberate opinion of the court, necessarily and appropriately expressed. They say, that, *as senator, he effected the passage of the bill, he advocated and supported it*, and was, *at the time, largely interested.* No arrangement of the words, *at the time*, can be made; no sense put upon them, save that of its being at the time he so *effected* the incorporation, he so *advocated and supported* it; and it is in this sense only that the idea of depravity can be attributed to his conduct, for it certainly could not have been supposed by the court below, or believed by any one, that the single circumstance of *his being a senator at the time of the passage of the bill*, and not opposing it, could render him culpable, provided he took no part in its passage, directly or indirectly. No, it is, and must be, for his conduct

IN ERROR.
.....
ALBANY,
March, 1814.

SPENCER
v.
SOUTHWICK.

while acting, and he is charged with acting, that he is to be held responsible ; when he so *effected* the incorporation ; when he so *advocated and supported* the bill, and it is *that time,* that his conduct and views are impugned by the libel, and the supreme court say, that implication is justified by the facts set forth in the plea.

In consequence of this decision, the plaintiff replied : " That, at the time he advocated and supported the said law, he did not hold, and was not the owner of any of the stock created by the said law, nor had he any interest whatever in the same." To which, as I have before stated, the defendant demurred, and in deciding upon, and in favour of that demurrer, the supreme court, speaking of the construction of the libel, say, " The libel consists in charging the plaintiff with concealing from the senate, his knowledge of the fact, that the bill contained a power to institute a bank, while he, at the time, knew that the senate was ignorant of that fact, by which means they were led to pass the bill under false impressions and under a concealment of the necessary truth. This is the charge which we consider to be actionable, and in which the substance of the libel consists, and which is justified by the plea, but neither the one nor the other do, by any necessary construction, convey the charge *assumed by the replication,* viz. that the plaintiff's conduct was induced by interested motives.

Sensible that whatever may have been the intention of that court, their decision on the question of construction, in terms, and in substance, was essentially different on the second occasion, that this cause came before them, from what it was on the first ; they say, that " the few preliminary remarks with which the previous opinion was introduced, may not have been clothed in language the most precise ; they were, however, never meant to convey a different opinion as to the sense or meaning of the libel."

Which of the two constructions thus given to this libel, by the court, is *correct,* may be a subject of discussion ; but that there has been error in one, at least ; that they cannot both be right, is self evident.

The construction of the libel which was adopted by the supreme court, in the first instance, is most obviously the true one. That the libel charges the plaintiff with aiding in effecting the incorporation ; that it charges him with practising hypocrisy

IN ERROR.

.....

ALBANY,
MARCH, 1814.

SPENCER
v.
SOUTHWICK.

to obtain the passage of the act, and that it charges him with doing so, in pursuance of an association previously formed for that purpose, are all admitted. But whether the plaintiff did all this from a sense of duty, from interested motives, from an expectation of interest, or from mere wantonness, say the supreme court, was left by the libel to the inference of the reader. What are the words? "I beg it may be remembered, that by hypocritical cants of this description, Judge *Spencer* and his associates effected the incorporation of the Manhattan Bank, *of which the judge's share of the profits was several thousand dollars.*" Now, what is the plain, obvious meaning of these words? and it is that plain, obvious meaning that a court of justice should adopt; why, that the plaintiff had practised a deception to effect the passage of a bill *for profit;* that he had succeeded, and that he *had made several thousand dollars by it.* That his share of the profits was several thousand dollars—his *share of the profits,* of what? of a contract he made for this stock, after the bank went into operation? Of stock that was either given or sold to him after the bill passed beyond his power? Not so. If, by either of these means, he had made a profit, it would have been a profit, resulting not from the success of the *deception* which he practised, but from *such subsequent gift or purchase.* But that is the very inference the writer of the libel wishes to avoid; he sets out with a determination to impeach the conduct of the plaintiff, and that construction would not effect his object. To leave no doubt of the charge intended, he concludes the libel in these emphatic words: "Whether the attempt at deception will succeed as well as that in relation to the Manhattan Bank, remains yet to be determined; of one thing I am certain, *it will not put as much money in the judge's pocket.*" What put money in the judge's pocket? A contract or arrangement which he made, after he practised the deception, which was neither settled, nor in contemplation at the time he so practised the deception, and which might or might not exist? No. It was the success of the *deception,* which, it is alleged, put the money in his pocket, by giving him either a present right or a valid future claim to a share of the profits.

The objections which are made to this construction, by the supreme court, are, 1st. That this would "be straining the libel into the most odious sense."

2d. That it would be alleging a fact which could not exist, as there could be no stock before the bill passed; and

3d. That, " whether the deception was practised by the plaintiff, by reason of any then existing interest in the bill or stock to be created by it, or from the *expectation* of some future interest to be procured when the bill should become a law, or without the influence of either of these motives, *was left by the libel, to the inference of the reader*."

I will briefly consider the validity of the reasons thus assigned. The construction which it behoves a court of justice to put on a publication which is alleged to be libellous, is to be derived as well from the expressions used, as from the whole scope and apparent object of the writer. Now, what was that in this case? The writer imputes the authorship of a certain publication, which professes to have for its object, among other things, the maintenance and support of religion, to the plaintiff. He calls public attention, and seeks to enlist public prejudice against him, as practising hypocrisy in that respect, for sinister purposes; a species of hypocrisy of all others the most odious and detestable; and, by way of ensuring public odium and settling public opinion, it is admitted that he charges the plaintiff with a prostitution of " hypocrisy and deception," in effecting the passage of an important bill through a branch of the legislature, of which he was a member, sworn to a faithful discharge of the duties attached to his station. In construing such a publication, it does not seem to me, that the purposes of justice would be best effected by testing it by the rules of grammatical accuracy, or weighing it with scrupulous precision; nor can I consider the construction I adopt, as at all " straining the libel" to a sense in any other degree odious than the author has made it, but, on the contrary, I am well satisfied that it is consistent with the spirit and object of the publication.

Nor is the second ground more tenable. It is true that, technically speaking, there could be no bank stock until the bank was incorporated; still we all know, or at least have heard, how these things are usually managed, and we are not at liberty to shut our eyes against this knowledge, to give a technical meaning to a publication confessedly libellous. These publications are addressed as well to the understandings as the passions of mankind; and it is the manner in which they will most probably be understood, which renders them injurious or

IN ERROR.
ALBANY,
March, 1814.
SPENCER
v.
SOUTHWICK.

otherwise. That applications to the legislature, of that description, are always made by persons whose interests are well defined and properly secured, either by the provisions of the bill, or *arrangements* beside it, is well understood; and that an association had been formed, and a subscription made, of which the plaintiff was both a subscriber and associate, is alleged in the preamble set forth in the defendant's plea, and which he charges to be the plaintiff's act. Whether that interest was a legal vested interest in the stock to be created by the law, or whether it was a benefit or interest dependent on the passage of the bill, and in expectancy at the time the plaintiff advocated it, was immaterial. Suffice it to say, it might be an interest which it would be corrupt in the plaintiff to promote, *by the violation of his official duty*, and for the *promotion* of which, his conduct might, as I have shown it has been, be impeached by the publication in question.

The third objection is already answered, *by showing*, that the motive which actuated the plaintiff is distinctly attributed to him by the libel, and not, as the supreme court suppose, left to inference.

I cannot, however, suffer the, in my judgment, exceptionable and alarming tendency of the doctrine contained in this objection, to pass without observation. The libel, say the supreme court, charges the plaintiff with the deepest moral depravity *in conduct;* it sets forth the circumstances of that depravity, but that they are not authorized to say that it charges him with a *corrupt design.* Why? Because the libel does not expressly so charge it, but only "leaves it to the inference of the reader." The least reflection must satisfy every intelligent mind that no one doctrine could be maintained, and no one legal notion indulged in, which would be productive of more mischief, in relation to libels, than the one contained in this *dictum* of the supreme court. It is saying nothing more nor less than this, you may so state your case before the public, that the guilt of the party accused, may follow as a matter of necessary implication; as, for instance, *A. B.*, in his official capacity, supported a measure flagrantly destructive of the public interest; he used the vilest hypocrisy to effect its success; he had an interest in, and made money by the act; but whether his inducements were mercenary or otherwise; whether it was

owing to a defect of understanding, or depravity of heart, I do not undertake to say, and, for such a publication, so seriously and necessarily implicating the conduct of the party accused, he would, according to this doctrine, be without adequate remedy, because, forsooth, he did not expressly charge him with the corruption, but *left it to the inference of the reader*. Such a doctrine, added to the acknowledged licentiousness of the press, would form a rampart, from behind which the blackest scurrility and the most odious criminations, might be hurled on private character with impunity, and would indeed render the press both a public and private curse, instead of a public blessing.

In whatever point of view, therefore, this libel is considered, the construction put upon it by the plaintiff is the correct one, and arriving at this conclusion, there is an end of the cause. For, whatever may have been the opinion of the supreme court in their first decision, in their second they expressly admit, that the plea answers the charge of deception and hypocrisy, and that only; that it does not, as is self evident from the slightest inspection of it, in any respect, answer the charge of imputing to the plaintiff corrupt motives, in supporting the bill arising from either an existing interest, or an expectation of individual interest, at the time he so supported it. Admitting, therefore, what may, with great propriety, be denied, that the facts set forth in the plea would justify the charge of deception and hypocrisy, as much as it confessedly does not answer that part of the charge, which is in itself the most odious; which serves to set off to the greatest disadvantage the others, and which stamps the whole transaction with guilt, it must on the conceded and irrefutable principle that a plea which professes to answer the whole declaration, and does not, is bad, be held defective. Nor do the facts set forth in the plea, in my judgment, support the charge of *hypocrisy and deception*. The libel charges the plaintiff with practising, *himself* practising, an imposition on the legislature, not with suffering others to practise one; and there is no fact set forth in the plea, which goes to support that charge, even viewed in the light it is, by the court below. But let us view the charges on the ground of being sins of omission, and being as well in form as in substance, if sins at all, tantamount to sins of commission. The plaintiff, say they, *knew that the bill contained a banking clause; the rest*

*of his fellow senators had the same means of knowing it that he had; he suffered them to pass the bill without informing them of it, and, by doing so, he is guilty of base deception,* of an act so reproachful, that to charge him with it publicly, is libellous. Was his conduct ever so disinterested, ever so free from selfish consideration, the duties of his station imposed upon him the obligation of, not only seeing, thinking, and speaking for himself, but of observing, reflecting, and acting for his fellow senators, and if he failed in his discharge of this duty, he was guilty of *deception and hypocrisy.*

Let me illustrate the flagrant injustice of this doctrine. A proposition is made in the senate, the success of which, I believe, will redound to the public benefit, and on that account I wish it success, and feel it my duty to give it my ardent support; I observe that although the extent of the proposition is obvious to me, it is not so generally understood, and I learn that if it was so understood, it would be opposed and defeated. What, under such circumstances, am I to do? If I undertake to instruct those whose duty it is to know, I defeat a measure with which I believe the public interest to be deeply connected. If I omit to do it, I am guilty of *hypocrisy,* of *deception.* Can such a proposition be considered equitable or legal, just or politic? No; the true rule on this subject is as simple as *it is* true. If a senator suffers a bill, which, *in his conscience, he thinks injurious to the public,* to pass, under a mistaken impression on the part of his brother senators, his conduct is culpable, for he violates his duty, in the first instance, by not resisting the passage of the bill, and that violation taints every thing he does to promote it, and stamps suspicion on any thing he omits to do.

If a senator promotes, in his seat, the passage of a bill, *for his own private emolument,* and obtains its passage in the manner in which the plea avers was done in this case, he is deeply culpable, for his individual interest contaminates his whole conduct. But in either case, to render such conduct criminal, it is essentially and indispensably necessary that the person accused should act against his *judgment or duty,* or for the unworthy purpose of *personal aggrandizement,* neither of which are now pretended in this case.

This view which I have taken of the subject, renders it unnecessary to examine the other points which have been raised by the counsel. On the ground, therefore, that the defendant's

IN ERROR.

ALBANY,
March, 1814.

SPENCER
v.
SOUTHWICK.
*March* 24th,
1814.

plea was bad, I am of opinion that the judgment below ought to be reversed.

ELMENDORF, Senator, was of the same opinion.

This being the unanimous opinion of the court, it was, therefore, " ORDERED, ADJUDGED, and DECREED, that the judgment of the supreme court be REVERSED, and that the plaintiff recover against the defendant his damages by him sustained, by reason of the publication of the libel in the said record contained ; and further, that the plaintiff recover against the defendant his *costs* to be taxed in and about the prosecution of this writ of error, in this behalf, and that the transcript of the record be remitted to the supreme court, to the end that a writ of inquiry of damages be awarded, and that the said supreme court proceed to give final judgment therein."

Judgment of reversal.

### END OF CASES IN ERROR.

*⁕* The remainder of the *Cases in Error*, decided in 1814, will appear in the next volume.