ALBANY,
Oct. 1827.

Root
v.
King.

*ROOT *against* KING AND VERPLANCK.

A libel is a malicious defamation, made public either CASE for an alleged libel published by the defendants, of and concerning the plaintiff, on the 25th of August,
by printing, writing, signs, or pictures, tending to blacken the memory of one who is dead, or the reputation of one who is alive, and expose him to public hatred, contempt or ridicule.

Malice is essential to maintain either a public prosecution or an action for a libel; but such malice may be inferred from the publication of the libel; or malice may be otherwise inferred; as from the falsity of the libel in a civil action; or it may be proved; and an unsuccessful attempt to justify in a civil action, is evidence of malice.

But though malice is generally to be inferred from the libellous nature of a publication; or its falsity; and it is to be taken as false till proved true by the defendant; yet the inference of malice, in either case, may be repelled by the circumstances of the publication, as the manner and the occasion; e. g. a master, on inquiry, giving a character to a servant, publication in the course of legal or judicial proceedings, in the exercise of church discipline, an application to the proper authority for redress of grievances, or for the removal of an officer to the person possessing the power to remove. In such cases, express malice must be proved, in order to maintain an action.

But the publication, in a newspaper, of a false libel in relation to a candidate for public office, (e. g. a candidate for the office of lieut. governor,) though such publication be by a voter, the editor of the paper, in the course of a contested election, is not an exception to the general rule. Malice will, therefore, in such case, be implied from the publication, or the falsity; and in an action for such a libel, the defendant is bound to show its truth, in order to justify.

So though the libel relate to a public act of the plaintiff in the legislature.

Public report of a fact stated in a libel, cannot be given in evidence in mitigation of damages, when the libel expressly disavows all reliance on report, and professes to go on the occular observation of the author.

Nor is such a report admissible to mitigate the damages in any action of slander, after the defendant has made an unsuccessful attempt to justify by giving the truth in evidence upon plea or notice, though such plea or notice be accompanied with the general issue.

Nor is it admissible where such plea or notice has been interposed, though there be no attempt to support it by proof.

Such plea or notice precludes all such other evidence in mere mitigation, as goes to repel the inference of malice; e. g. as relates to the manner and occasion; as that words were spoken in a passion, not maliciously, or through mistake, &c.

And so, it seems, of all matters which go entirely to excuse the publication; as that the words were published in giving a character to a servant, or in the course of a judicial proceeding, &c ; for,

The plea or notice of the truth in justification admits the malice, and puts the naked truth in issue.

The truth is a good defence, though the publication be malicious.

But where the general issue is pleaded, and there is no plea or notice of the truth in justification, the above matters which would be precluded by such plea or notice, may be given in evidence, either in mitigation, or total excuse, according to their own nature and effect.

But the truth of the slander cannot be given in evidence under the general issue in mitigation of damages.

And circumstances tending to prove the truth are equally inadmissible.

The general character of the plaintiff is, however, at issue in an action of slander, without regard to the pleadings or notice on the part of the defendant.

But this means his character in the most general sense, not his character in relation to any foibles, failings or vices which may derogate from a good general character. The question to the witness should be, what is the plaintiff's general character? The defendant cannot go beyond this, in the first instance, though the plaintiff may call for the witness' grounds.

The New York senate journals, printed by the state printer, and laid on the tables of members, are evidence.

*1824, in a newspaper called the "New-York American," of which the defendants were the editors. The declaration contained two counts on the libel in question, which was as follows:

"*Lieutenant Governor Root.*—It has been denied, we understand, by the Argus," &c., "in answer to some strictures on the subject in an Albany paper, that on the afternoon of his famous decision of order, Mr. Root was intoxicated; and the charge is treated as calumnious," &c.

"The facts are shortly these: We speak only what we saw; and as it is a matter of some public concern, that the presiding officer of our senate should not continue to be what Mr. Root is, we speak without hesitation or reserve.

"The house of assembly having sent to the senate the resolution declaring the expediency of passing, at the then session, an electoral law, it was anticipated that some interesting proceedings would, in consequence, be had in that body. Accordingly, when it met at five o'clock in the afternoon, to which hour it had in the forenoon, previously to the passage of the resolution in the assembly, adjourned, a great concourse of citizens, and of strangers, from all parts of our country, crowded its floor, lobbies and gallery. When the lieutenant governor, at the hour named, advanced through the centre of the apartment towards his chair, there was in his appearance, **manner**, and walk, something that excited every one's observation. He reached his station, however, and calling the members to order, informed them that there was a message from the assembly, which the clerk then read. A dead silence ensued. Lieutenant governor Root, holding on to each arm of his chair, looked round with inflamed face, with blood-shot eyes, and half open mouth, and with an expression altogether so stolid and drunken, as in any other situation, and under other circumstances, could not have failed to excite the derision of all present.

A verdict on the question whether a libel is true, will not be set aside as against the weight of evidence, unless in a clear case:

Nor for excessive damages, unless they are grossly so.

A plea or notice of the truth in justification of a slander, if unsupported by evidence, is proper to be considered in aggravation of damages.

ALBANY,
Oct. 1827.

Root
v.
King.

"He was evidently expecting some motion previously concerted, probably in order to enable him to pour forth the diatribe with which he was laboring; but none such *was made, and he, therefore, was compelled to remark, 'the chair has no observations to offer, unless some motion be proposed.' Thereupon, it was moved by Mr. Burt, we believe, at any rate by some one opposed to the faction, 'that the senate concur in the resolution sent from the assembly.'"

"This furnished the spark to the combustibles smouldering in the breast of the lieutenant governor; instantly he essayed to rise, and by the all-important aid of the arms of his chair and his desk in front, he did rise, and stood for a moment, as if in preparation, silent before several hundreds of his fellow citizens, an object, from his appearance and manner, we will venture to say, of loathing and disgust to every unprejudiced man among them; unwashed, unshaven, haggard, the tobacco juice trickling from the corners of his mouth to be wiped away with his coat sleeve; with unsteady footing, this second officer of the great state of New-York, commenced his address to the senate. It is known that the presiding officer of this body has no other than a casting vote, and no right at all to speak. He may, however, assign reasons for any decision he makes, and under this shallow pretext, Mr. Root uttered a long and labored vindication, not only of the course he was about to take in declaring the motion for concurrence out of order, but of the whole course of proceedings of the senate; and then launched forth into a regular philipic against the governor and assembly, whom he charged with vying with each other in the race of popularity. It was the harangue of an intemperate demagogue, blind with passion and rum. As such it was heard by all impartial men: and our only astonishment was, that the respectable members of the senate could sit still, and permit their presiding officer thus to disgrace himself and them. He should have been called to order, and compelled to sit down. He was doing what he had no more right to do than any grovelling sot from the public kennel. He was out of order in presuming to

address the senate at all; but to address them in his then state, and in the terms he did, was outraging all order, decency and forbearance."

*Plea, the general issue, with notice that the defendants would give in evidence, on the trial, the truth of the matter contained in the libel, in justification, with other matters, which will be found stated in the opinion of the court.

The cause was tried at the Delaware circuit, on the 13th of June, 1826, before BETTS, (late) C. Judge. The publication of the alleged libel was admitted by the defendants to have been made by them, and to have been written by the defendant King.

The testimony of witnesses was then heard on both sides; and various points of law decided by the judge, and given in charge by him to the jury; which testimony and points, with the judge's decisions and charge, so far as they are deemed material, will be found stated in the opinion of the court.

The jury found for the plaintiff, with 1400 dollars damages.

A motion was made, in behalf of the defendants, for a new trial, which was argued at the last August term, by

*J. Blunt* for the motion;

*J. Suydam* and *E. Williams*, contra; and

*D. B. Ogden* in reply.

The points discussed being also arranged and very fully examined by the court, it is not deemed necessary to do more in this place, than give the books cited and commented upon by the counsel.

References on the argument in support of the motion. As to granting a new trial for excessiveness of damages; *Blunt* v. *Little*, 3 Mass. Rep. 102, 106, Cor. Story, J. As to proof of the journals; 1 Phil. Ev. 321; *Stoever* v. *Whitman*, 6 Bin. 416. As to proof of the plaintiff's standing and character, and of reports concerning him; *Larned* v.

*Margin note:*
ALBANY,
Oct. 1827.

Root
v.
King.

*Buffington*, 3 Mass. Rep. 546; *Paddock* v. *Salisbury*, 2 Cowen, 811; *Matson* v. *Buck*, 5 Cowen, 499; ———— v. *Moor*, 1 M. & S. 284; *Calloway* v. *Middleton*, 2 Marsh. *Ken. Rep. 372; *Eastland* v. *Caldwell*, 2 Bibb's Ken. Rep. 21, 24; *Cook* v. *Barkley*, 1 Pennington's N. J. Rep. 169; *Lane* v. *Howman*, 1 Price, 76; *Treat* v. *Browning*, 4 Con. Rep. N. S. 408. That it was a defence, to show the libel published in good faith, from good motives and for justifiable ends, though it was not strictly true; *Weatherston* v. *Hawkins*, 1 T. R. 110; *Rogers* v. *Clifton*, 3 B. & P. 587; *Barbaud* v. *Hookham*, 5 Esp. Rep. 109; *Johnson* v. *Evans*, 3 Esp. Rep. 32; *Pitt* v. *Donovan*, 1 M. & S. 639; *Gray* v. *Pentland*, 4 Serg. & Rawle, 420; *Remington* v. *Congdon*, 2 Pick. 310; *Bunton* v. *Worley*, 4 Bibb's Ken. Rep. 38; *Jarvis* v. *Hatheway*, 3 John. 186; *Fairman* v. *Ives*, 5 B. & A. 642; *Thorn* v. *Blanchard*, 5 John. 508; *Harris* v. *Huntingdon*, 2 Tyler's Vt. Rep. 129. Authorities opposed to the last position; 5 Bac. works, 110; *Rex* v. *Woodfall*, 5 Burr. 2661.

References by the counsel for the plaintiff. Starkie on Slander, Am.' ed. 327, 8, 9, 342, 45, 405, 409, 410; *Matson* v. *Buck*, 5 Cowen, 499; *Alderman* v. *French*, 1 Pick. 1; *Paddock* v. *Salisbury*, 2 Cowen, 811; *Earl of Leicester* v. *Walter*, 2 Campb. 251; *Winchell* v. *Latham*, 6 Cowen, 682; *Kennedy* v. *Gregory*, 1 Bin. 87, per Yeates, J.; *Jarvis* v. *Hatheway*, 3 John. 180; *Hurtin* v. *Hopkins*, 9 John. 36; *Duncan* v. *Dubois*, 3 John. Cas. 125; *Coleman* v. *Southwick*, 9 John. 45; *Southwick* v. *Stevens*, 10 John. 442.

*Curia, per* SAVAGE, Ch. J. The defendants move for a new trial on several grounds, which they have stated in nineteen points; but which are all embraced in the following: That the verdict is against evidence; that the damages are excessive; that the judge admitted improper, and rejected proper testimony, (especially that he refused, in mitigation of damages, evidence of the plaintiff's intemperance, unless of the degree described in the libel;) and that he misdirected the jury upon the law of libel.

The declaration contains two counts, both setting forth

the same libel. The plea is the general issue, with a notice subjoined, stating that the defendants will give in evidence *in bar of the plaintiff's action, among other things, the following : 1. That on the 5th of August, 1824, the plaintiff, at the place mentioned, was intoxicated and drunk, and a disgusting and loathsome object, &c. ; 2. That the plaintiff's conduct and appearance, on the occasion, were derogatory to his station, and such as to create a belief that he was intoxicated ; 3. That his conduct and appearance were highly disgraceful, and such as to warrant the charges in the alleged libel ; 4. That the matter charged as libelous is true, and was published with good motives and for justifiable ends; 5. That the plaintiff has been often drunk and intoxicated when in the discharge of his legislative duties, and when acting as president of the senate ; and, 6. That the plaintiff is an habitual drunkard.

On the trial, the publication of the alleged libel was admitted by the defendants' counsel. They then introduced several witnesses to sustain their justification ; and several were introduced on the part of the plaintiff to disprove it. In the course of their examination, some questions were raised as to the admissibility of testimony, which will be hereafter noticed.

The judge addressed the jury at considerable length, and with much ability. He informed them, that if the publication admitted to have been made by the defendants, held the plaintiff up to reproach or disgrace, either in his public or private character, it was a libel. That malice need not be proved ; it would be implied if the charge was false. He stated that the publication was libelous, and the contrary had not been contended for on the part of the defendants. That they asserted its truth. He instructed the jury, that, if true, this amounted to a perfect answer and bar to the plaintiff's suit, though the defendant's motives might have been ever so malicious and vindictive. That if good motives were necessary to be shown, they would be implied from the establishment of the truth, as malice is inferred from the falsity. He further stated that the defendants were bound to prove the whole charge satisfacto-

rily. That the charge was drunkenness on the occasion. That would not be justified by proving excitement *less than drunkenness. The justification must be co-extensive with the slander. That as the defendants had stated what they meant by drunkenness, they were bound to show that the plaintiff's situation was such as they described it. That the opinions of witnesses were to have weight according to their capacity and opportunity for judging; but where the witness stated the facts upon which his opinion was founded, the jury would draw their own conclusions from the facts stated. That editors of newspapers were equally responsible with others: and when they assumed the privilege of denouncing individual character, they did it under every responsibility that would attach to citizens in any other capacity. The judge then stated that there was much contradictory testimony; that the witnesses were all credible and respectable. He commented on the testimony; and then called the attention of the jury to the question of intoxication; concluding that if the plaintiff was intoxicated, the defendants must be acquitted; if, not, the plaintiff was entitled to a verdict. The judge then stated, that the defence had a double aspect; that if the justification failed, the defendants might give evidence in mitigation; that they might prove the plaintiff's general reputation was equivalent to what they had charged upon him; that less than this, as to temperance could be of no avail. Under a charge of drunkenness so as to be an object of loathing and disgust, the defendants could not prove in mitigation, that the plaintiff was addicted to the free use of liquor, any more than a person charged with theft might be proved guilty of petty trespasses. He stated that no evidence had been offered of general character, except as to temperance. In respect to the reports prevalent at Albany, the judge charged that they could not mitigate, unless they went as far as was required for general character; and influenced the defendants in making the publication. But if the defendants did not rest their charges on such reports, then they were of no avail. He then alluded to the relative situation of the parties; the plaintiff a public man; the

defendants conductors of a public press. He stated that if the plaintiff *was injured, the defendants' situation did not entitle them to favor.

The jury were out all night. They came into court the next morning, and requested instructions as to the proof of general character which might be received in mitigation of damages. The judge observed to them, that " the defendants may not give evidence of general character, as to temperance, in mitigation, unless of the same quality and degree charged in the libel," which was excepted to by the defendants' counsel. The jury found for the plaintiff $1400 damages.

1. A libel is defined by Blackstone, to be a malicious defamation of any person, and especially a magistrate, made public by either printing, writing, signs or pictures, in order to provoke him to wrath, or expose him to public hatred, contempt and ridicule. (4 Bl. Com. 150.) Hawkins defines a libel, to be a malicious defamation, tending to blacken the memory of one who is dead, or the reputation of one who is alive ; and expose him to public hatred, contempt or ridicule. (Hawk. b. 1, ch. 73, s. 1.) Chitty remarks, that the term malicious is introduced by Hawkins into the definition of libel ; but in this case, as in murder and many others, the quality is rather a legal inference from the crime than one of its constituent parts ; and there is no occasion to prove it. (3 Ch. Cr. L. 867, and the cases there cited.)

The judge, on the trial, laid down the law substantially as given by these writers; expressly stating that if a libel be false, malice is inferred, and need not be proved. As he is supposed to have erred in this particular, it may be proper to see on what authority the assertion rests, that malice is implied from the falsity, the libelous character of the publication being admitted.

In *The King* v. *Woodfall*, (5 Burr. 2661,) tried before Lord Mansfield in 1770, he told the jury, that whether the paper was in law a libel, was a question of law upon the face of the record ; for, after conviction, a defendant may move in arrest of judgment, if the paper is not a libel.

That all the epithets were formal inferences of law *from the printing and publishing. That no proof of express malice ever was required; and, in most cases, is impossible to be given. That the verdict finds only what the law infers. That when an act in itself indifferent, if done with a particular intent, becomes criminal, then the intent must be proved and found : but when the act is in itself unlawful, the proof of justification or excuse lies on the defendant : and in failure of that proof, the law implies a criminal intent.

This doctrine received the approbation of the whole court; and seems not to have been again judicially agitated, till 1784, (3 T. R. 428, note (a,) when the dean of St. Asaph was tried for a libel before Mr. Justice Buller. He maintained the same doctrine, and gave the same direction to the jury ; that all they had to find, was the fact of publication, and the truth of the innuendos ; leaving the question of libel or not, upon record for the court. On the case coming before the king's bench, Lord Mansfield declared that such had been the practice of the court for more than 100 years.

Soon after the trial of Woodfall, Lord Mansfield was attacked in parliament, and his doctrine denied by lords Camden and Chatham in the house of lords, and by Messrs. Glynn and Dunning in the house of commons. The complaint was, that, by the decision, juries were to judge of the facts and tendency only ; but not of the intention; and that the truth of the allegations could not be pleaded in abatement of the guilt. (1 Bisset's History, 321.) And in 1791, the statute 32 Geo. 3, ch. 60, was passed, by which the jury are authorized to give a general verdict upon the whole matter in issue; and shall not be required to find the defendant guilty upon proof of publication and of the innuendos only. I believe it was denied by no one, either in court or in parliament, that the publication of a paper libelous and unlawful upon its face was, *prima facie* evidence of malice ; nor was it contended that express malice should be shown by matter *aliunde*. It was, indeed, very properly contended, that the criminality consisted in the malicious

intention; and that the establishment *of the fact of publication was merely evidence of the crime; but not the crime itself. That every general verdict involves a question of law; and that the judge should have instructed the jury how to form the general conclusion of guilty, which is compounded of both law and fact. That if the term *guilty* was essential, then a conclusion of criminal intent had been obtained from the jury, without permitting them to exercise their judgment upon the defendant's evidence. That in all cases, where the mischievous intention, which is the essence of the crime, cannot be collected by simple inference from the fact charged, because the defendant goes into evidence to rebut such inference, the intention becomes a pure unmixed question of fact for the consideration of the jury. (Starkie on Slander, 362, 3, 4, 5, 6.)

The act of parliament did not undertake to declare what should be evidence of publication, or of the malicious intent, and that the law on that point was not questioned by parliament, or by any one else, appears from the case of *The King* v. *Lord Abingdon*, (1 Esp. N. P. Cases, 226.) That was an indictment for a libel upon an attorney, by a member of the house of lords, in a speech made in that house, and published by him in the newspapers. The trial was about three years after the passing of the act on the subject of libel. Lord Kenyon declared the law to be as follows: "In order to constitute a libel, the mind must be in fault, and show a malicious intention to defame; for if published inadvertently, it would not be a libel. But when a libelous publication is unexplained by any evidence, the jury should judge from the overt act; and, when the publication contains a charge slanderous in its nature, should from thence infer that the publication was malicious."

Such has always, I apprehend, been the law in England; and such is the law there now. The case of *The King* v. *Creevey*, (1 M. & S. 273,) was for a libel; and, like the last case, against a member of parliament, for publishing his speech containing a libelous charge in relation to an individual. It appeared, in this case, that the defendant

*had not been entirely a volunteer in publishing his speech; but that an incorrect report of it having appeared, he furnished a correct one, which was also published, and contained the libel complained of. The counsel for the defendant, at the trial before Le Blanc, justice, in 1813, contended there was nothing to submit to the jury; for 1. there was no proof of malice; and, 2. the defendant was privileged as a member of parliament. The judge decided that it was not necessary to prove malice; but it might be inferred from the publication itself: and, upon the authority of the last case, he held that the defendant was accountable for publishing his speech in parliament; though for speaking the same matter in parliament, he was not answerable. The court of king's bench refused, on a motion for a new trial, event to grant a rule to show cause; because, as Lord Ellenborough said, the granting it would be to create doubts, not to settle them. On the point of malice, he said, the only question was, whether the occasion of that publication rebuts the inference of malice arising from the matter of it. Le Blanc, justice, said he stated to the jury, that when the publication is defamatory, the law infers malice, unless something can be drawn from the circumstances attending the publication, to rebut that inference; and he left it to them to say, whether the circumstances did so rebut it. Mr. Phillips, in his treatise on evidence, says, "malice may be inferred from the publication, or proved by evidence. It must often be extremely difficult to produce direct evidence of a malicious design, extrinsic and independent of the publication in question; but the publication itself will often afford the most convincing proof of malice. If the words are directly calculated to slander and degrade the character, the obvious inference is, that they were designed to have this effect, unless something can be drawn from the circumstances attending the publication to repel such an inference. All the circumstances, therefore, the manner, the occasion, and the matter of the publication, are most material and important considerations." (2 Phil. Ev. 106.)

*An unsuccessful attempt to justify the words or libel, is evidence of malice. (15 Mass. Rep. 48.) So, in this court,

the plea or notice of justification, if unfounded, is always considered an aggravation of the offence ; and good ground for enhancing damages.

In *Gray* v. *Pentland*, (2 Serg. & Rawle, 27,) Brackenridge, justice, makes use of this language : " The idea that a person libeled, or maliciously prosecuted, must prove the *quo animo*, or express malice, is of all things the most absurd."

It was, perhaps, unnecessary to cite cases from the English books, or from our sister states, on this point; for the cases in our own reports abundantly establish the proposition, that the malicious intent will be inferred from the falsity and the libelous character of the publication.[1]

[1] In the case of the *King* v. *Lord Abingdon*, (1 Esp. C. 228,) Lord Kenyon observed, that " In order to constitute a libel, the mind must be in fault, and show a malicious intention to defame ; for if published inadvertently, it would not be a libel : but where a libelous publication is unexplained by any evidence, the jury should judge from the overt act ; and where the publication contains a charge, slanderous in its nature, they should from thence infer that the publication was malicious."

In the case of the *King* v. *Phillips*, (6 East. 470.) Lord Ellenborough, observed, that "In case of libels, where the publication is proved, the law will infer malice." In another case (*Brown* v. *Croome*, Starkie's C. 297,) the same learned judge observed, that " every unauthorized publication, which is detrimental to another, is in point of law, to be considered as malicious."

In the case of the *King* v. *Creevy*, (2 M. & S. 273,) Le Blanc, J., said, that " where a publication is defamatory, the law infers malice, unless anything can be drawn from the circumstances of the publication to rebut the inference." (See *Haire* v. *Wilson*, 9 B. & C. 472.)

In the case of the *King* v. *Almon*, (*R*. v. *Alman*, 5 Burr. 2686,) the defendant, a bookseller, was convicted of publishing a libel, on proof of the sale of the book containing the libel, by a servant of the defendant, in his shop. And it was said by the court, that this was *prima facie* evidence sufficient to ground a verdict upon ; that if the defendant had had a sufficient excuse, he might have shown and proved it, and that any circumstances of exculpation or extenuation ought to have been established by the defendant.

Abbott, L. C. J., in the case of the *King* v. *Harvey*, (2 B. and C. 258,) stated to the jury, that " the man who publishes slanderous matter, calculated to defame another, must be presumed to have intended to do that which his publication is calculated to bring about, unless he can show to the contrary, and it is for him to show the contrary."

A wanton disregard of the feelings of others, is, in point of law as well as morals, inexcusable ; so that it is no defence for the publisher of a libel, to say that he was but in jest, for, as has been observed by a learned writer, the mischief to the party grieved is no way lessened by the merriment of

ALBANY,
Oct. 1827.
———
Root
v.
King.

In *The People* v. *Croswell*, (3 John. Cas. 337,) tried before chief justice Lewis in 1803, he gave the jury the same direction which was given by Lord Mansfield in *The King* v. *Woodfall*, and by Mr. justice Buller in *The King* v. *The*

him who makes so light of it. (9 Co. 59; Moor, 627; Haw. c. 73, s. 14.) The mere absence of malice in particular against the party whose reputation is destroyed, and the excuse that the real motive was not malice, but a desire of gain, is no better plea than that which might be used by a hired assassin. (Haw. P. C. c, 73, s. 14.)

If, however, the inference of malice be a mere inference of law, it is capable of being rebutted; but not, it should seem, otherwise than by proof of such an occasion of publishing, as furnishes a legal excuse for the act.

In the abstract, to deprive another of his reputation, by any wilful or negligent act, is immoral and illegal; but the law, for wise purposes, and upon a principle of policy and convenience, restrains the right to damages, and affords a privilege and protection to many communications, though they deeply affect the characters of individuals; but as such a protection depends on considerations of legal policy, it is for the law to prescribe its limits and boundaries.

And the law does not, as it seems, extend that protection to any case, merely because an actual intention to injure is wanting, and unless some recognized justification or excuse be supplied by the occasion and circumstances attending the publication.

From some of the older authorities, indeed, it appears to be doubtful, whether, if the speaker or writer acted without malice, in the common and popular sense of the word, and intending, (it may be,) good, rather than harm, to another, he was civilly responsible for his act.

In the case of *Brooke* v. *Sir Henry Montague*, (14 H. 7, 14; 20 H. 6, 84,) Coke cited a case, where a clergyman, in a sermon, recited a case out of Fox's Martyrology, that one Greenwood, being a perjured person and a great persecutor, had great plagues inflicted on him, and was killed by the hand of God; whereas, in truth, he never was so plagued, and was himself present at that sermon. And he thereupon brought his action upon the case, for calling him a perjured person; and the defendant pleaded not guilty; and this matter being disclosed upon the evidence, Wray, C. J., delivered to the jury, that it being delivered but as a story, and not with any malice or intention to slander any, he was not guilty of the words maliciously, and so was found not guilty. (Cro. J. 90.)

And Popham affirmed it to be good law, when he delivers matter after his occasion as a matter of story, and not with intent to slander any.

This case, it is to be observed, is no authority for concluding that the mere absence of a slanderous intention may furnish a legal defence, independently of a lawful occasion of publishing; for there was in that case, as will be hereafter seen, a lawful occasion which, in the absence of actual malice, supplied a sufficient justification. For the story was delivered by a clergyman, in the course of discharging the duties of his sacred office.

The plaintiff brought an action against one for saying of him, that he heard

*Dean of St. Asaph;* that it was no part of the province of a jury, to inquire into, or decide on the intent of the defendant; or whether the publication in question was true, or false, or malicious; but that the intent and the character of

he was hanged for stealing of an horse; and, upon the evidence, it appeared that the words were spoken in grief and sorrow for the news. Twisden, J., cited this, as a case which he heard tried before Hobart, J., who non-suited the plaintiff, because the words were not spoken maliciously, and all the court agreed that this was done according to law. (Lev. 82; Mich. 14; Car. 2; 1 Vin. Ab. 540.)

It does not appear, from the short statement of this case, what were the particular circumstances of the case; yet it seems, in principle, that if any one, trusting to an idle rumor, occasions damage to another, either in law or in fact, he is, on the principles of natural justice, liable to render amends.

He is at least guilty of negligence, in giving publicity to an injurious and unfounded calumny.

The law, in the ample provision which it makes for the convenience and exigencies of society, necessarily regards the occasion and circumstances of publication, and does not afford indemnity from the consequences of publication of injurious and noxious matter, except with a view to some useful and beneficial purpose, where a party may be supposed to act honestly and sincerely in the execution of some public or private duty. The gratification of curiosity, by the circulation of unauthenticated rumors, can scarcely be regarded as a fit object of legal protection. If so, it follows that every one who ventures to propagate an unfounded calumny, to the injury of the character of another, does it at his peril, and that, unless he can show some lawful occasion for publishing, that is, some cause for publishing under the particular circumstances which the law recognizes as affording a sufficient excuse, the total absence of an actual intention to injure will not avail as a justification.

It were almost needless to observe that, in numerous cases, the law gives an injured party a compensation in damages against the author of the mischief, although the latter was actuated by no mischievous intention. Thus, if a party, in the exercise of his lawful calling or business, casually injure the property or possession of another, he is liable to make compensation in damages, although he had no intention to injure any one.

So it is no justification or excuse to a man, that he published a libel, to the injury of another, merely in the course of his business and occupation of a printer, for he, as well as others, is bound so to carry on his trade or business as not to injure others. (2 St. Tr. 7, 547.)

The late case of *Prosser* v. *Bromage* (4 B. & C. 247,) affords an illustration of these principles; and by this decision, the application of the distinction between malice in law and actual malice, or malice in fact, and the sufficiency of malice in law to support the action, seem to be fully established.

The plaintiffs were bankers, and the charge was, that, in answer to a question put by one Lewis Watkins, whether he, the defendant, had said that the plaintiffs' bank had stopped, the defendant's answer was, it was

the publication, whether libelous or not, would be decided the court. On a motion for a new trial, the two great questions were, whether the truth could be given in evidence, and whether the jury were to judge of the intent

true he had been told so, that it was so reported at C., and that no one would take their bills, and that he had come to town in consequence himself. It was proved that C. D. had told the defendant, that there was a run on the plaintiffs' bank at M. Upon this evidence, it was left to the jury to say whether the defendant had acted maliciously and with ill-will towards the plaintiffs, and that they ought to find their verdict for the defendant, if they thought that he had not acted maliciously. After a verdict for the defendant, upon a motion for a new trial, the court (of King's Bench) held that the law recognized the distinction between these two descriptions of malice, viz: malice in fact, and malice in law. That malice, in common acceptation, meant ill-will against a person; but in its legal sense, it meant a wrongful act done intentionally, without legal justification or excuse; and that, in ordinary actions for slander, malice in fact was not essential; that malice in law was sufficient, and was to be inferred from the publishing of the slanderous matter, the act being wrongful and intentional, and without any just cause or excuse.

Bayley, J., delivered the judgment of the court, and after stating the circumstances of the case, observed : " The learned judge considered the words as proved, and he does not appear to have treated it as a case of privileged communication; but, as the defendant did not appear to be actuated by any ill-will against the plaintiffs, he told the jury, that if they thought the words were not spoken *maliciously*, though they might unfortunately have produced injury to the plaintiffs, the defendant ought to have their verdict; but if they thought them spoken maliciously, they should find for the plaintiff; and the jury having found for the defendant, the question, upon a motion for a new trial, was upon the propriety of this direction. If in an ordinary case of slander, (not a case of privileged communication,) want of malice is a question of fact for the consideration of a jury, the direction was right; but if in such a case, the law implies such malice as is necessary to maintain the action, it is the duty of the judge to withdraw the question of malice from the consideration of the jury; and it appears to us that the direction in this case was wrong. That malice, in some sense, is the gist of the action, and that, therefore, the manner and occasion of speaking the words is admissible in evidence, to show they were not spoken with malice, is said to have been agreed, (either by all the judges, or at least by the four, who thought the truth might be given in evidence on the general issue,) in *Smith* v. *Richardson*, (Wills, 24,) and it is laid down, (1 Com. Dig. action upon the case for defamation, G. 5,) that the declaration must show a malicious intent in the defendant; and there are some other very useful elementary books, in which it is said that malice is the gist of the action, but in what sense the word malice, or malicious intent, are here to be understood, whether in the popular sense or in the sense the law puts upon

and the law.    Mr. Justice Kent delivered an able and
eloquent argument in the affirmative of both points; but
he did not insist that the intent is not to be collected from
the publication itself and the concomitant circumstances.

those expressions, none of these authorities state.    Malice, in common ac-
ceptation, means ill-will to a person; but in its legal sense, it means a
wrongful act done intentionally, without just cause or excuse.    If I maim
cattle without knowing whose they are, if I poison a fishery without know-
ing the owner, I do it of malice, because it is a wrongful act, and done in-
tentionally.    If I am arraigned of felony, and wilfully stand mute, I am said
to do it of malice, because it is intentional and without just cause or excuse;
and if I traduce a man, whether I know him or not, and whether I intend
to do him an injury or not, I apprehend the law considers it as done of
malice, because it is wrongful and intentional.    It equally works an injury,
whether I meant to produce an injury or not; and if I had no legal excuse
for the slander, why is he not to have a remedy against me for the injury it
produces?    And I apprehend the law recognizes the distinction between
these two descriptions of malice, malice in fact and malice in law, in actions
of slander.    In an ordinary action for words, it is sufficient to charge that
the defendant spoke them *falsely*; it is not necessary to state that they were
spoken *maliciously*.    This is so laid down in Styles, 392, and was adjudged
in error in *Mercer* v. *Sparks*, Owen, 51; Noy, 35.    The objection there was,
that the words were not charged to have been spoken maliciously; but the
court answered, that the words were themselves malicious and slanderous,
and therefore the judgment was affirmed.    But in actions for such slander
as is, *prima facie*, excusable, on account of the cause of speaking or writing
it, as in the case of servants' characters, confidential advice, or communica-
tions to persons who ask it or have a right to expect it, malice in fact must
be proved by the plaintiff; and in *Edmonson* v. *Stevenson*, B. N. P. 8, Lord
Mansfield takes the distinction between these and ordinary actions for slan-
der.    In *Weatherstone* v. *Hawkins*, 1 T. R. 110, where a master, who had
given a servant a character, which prevented his being hired, gave his
brother-in-law, who applied to him upon the subject, a detail, by letter, of
certain instances, in which the servant had defrauded him.    Wood, who
argued for the plaintiff, insisted that this case did not differ from the case of
common libels; that it had the two essential ingredients, slander and false-
hood; that it was not necessary to prove express malice; if the matter is
slanderous, malice is implied; it is sufficient to prove publication; the mo-
tives of the party publishing are never gone into; and that the same doc-
trine held in actions for words, no express malice need be proved.    Lord
Mansfield said the general rules are laid down as Mr. Wood has stated; but
to every libel there may be an implied justification from the occasion.    So as
to the words, instead of the plaintiff's showing it to be false and malicious, it
appears to be incidental to the application by the intended master for the
character, and Buller, J., said this is an exception to the general rule, on
account of the occasion of writing.    In actions of this kind, the plaintiff

ALBANY,
Oct. 1827.

Root
v.
King.

His language was, "If the criminal intent be, in this case, an inference of law, the right of the jury is still the same." The question was not how the intent was to be proved; but who should determine that intent, the court or the jury.

must prove the words "*malicious*" as well as *false*. Buller, J., repeats in *Pasley* v. *Freeman*, (3 T. R. 51,) that for words spoken confidentially upon advice asked, no action lies, unless express malice can be proved. In *Van Spike* v. *Cleyson*, Cro. Eliz. 541, it was held not to be actionable for one man to tell another *confidentially*, not to trust a merchant, for (it was said) it was only by way of counsel. So in *Hargrave* v. *Le Breton*, 4 Burr. 2425. Lord Mansfield states that no action can be maintained against a master for the character he gives a servant, unless there are extraordinary circumstances of express malice. But in an ordinary action for a libel or for words, though evidence of malice may be given to increase the damages, it never is considered as essential; nor is there any instance of a verdict for the defendant on the ground of want of malice.

Numberless occasions must have occurred, (particularly where a defendant only repeated what he had heard before, but without naming the author,) upon which, if that were a tenable ground, verdicts would have been sought for and obtained, and the absence of any such instance is a proof of what has been the general and universal opinion upon the point. Had it been noticed to the jury how the defendant came to speak the words, and had it been left to them, as a previous question, whether the defendant understood Watkins as asking for information for his own guidance, and that the defendant spoke what he did to Watkins merely by way of honest advice, to regulate his conduct, the question of malice in fact would have been proper as a second question to the jury, if their minds were in favor of the defendant upon the first; but as the previous question I have mentioned was never put to the jury, but this was treated as an ordinary case of slander, we are of opinion that the question of malice ought not to have been left to the jury. It was, however, pressed upon us with considerable force, that we ought not to grant a new trial, on the ground that the evidence did not support any of the counts in the declaration; but upon carefully attending to the declaration and the evidence, we think we are not warranted in saying, that there was no evidence to go to the jury to support the declaration, and had the learned judge intimated an opinion that there was no such evidence, the plaintiff might have attempted to supply the defect. We, therefore, think that we cannot properly refuse a new trial, upon the ground that the result upon the trial might have been doubtful. In granting a new trial, however, the court does not mean to say, that it may not be proper to put the question of malice as a question of fact for the consideration of the jury; for if the jury should think, that when Watkins asked his question, the defendant understood it as asked in order to obtain information to regulate his own conduct, it will range under the class of privileged communication, and the question of malice, in fact, will then be a necessary part of the jury's inquiry: but it does not appear that it was left to the jury, in this case, to consider

ALBANY,
Oct. 1827.

Root
v.
King.

Both the questions agitated in that cause, were put at rest by the act of April 6th, 1805, (sess. 28, ch. 90,) which declared that the jury shall have a right to determine the law and the fact, under the *direction of the court; and that it shall be lawful to give the truth in evidence, provided the publication was made with good motives and for justifiable ends.

It is the settled law of this state, that, to support an action of this nature, malice is essential; and whether there is malice in the publication, belongs to the jury to decide as matter of fact, under the direction and advice of the court. (*Jarvis* v. *Hatheway*, 3 John. 180.) But how is malice to be proved? In few cases will it be declared. It must be inferred from the libelous nature of the publication, and (unless in certain excepted cases) falsehood, added to the character of the publication, must be considered, *prima facie*, evidence of malice.

In the case of *Lewis* v. *Few*, (5 John. 35,) Thompson, justice, in delivering the opinion of the court, says, " Where the act is in itself unlawful, the proof of justification or excuse lies on the defendant; and on failure thereof, the law implies a criminal intent. If a libel contains an imputation of a crime, or is actionable without showing special damage, malice is, *prima facie*, implied : and if the defendant claims to be exonerated on the ground of want of malice, it lies with him to show it was published under such circumstances, as to rebut this presumption of law." Again he says, " the accusations being false, the *prima facie* presumption of law is, that the publication was malicious."

whether this was understood, by the defendant, as an application to him for advice, and if not, the question of malice was improperly left to their consideration. We are, therefore, of opinion, that the rule for a new trial must be absolute.

In the case of *Duncan* v. *Thwaites*, (3 B. & C. 585,) Abbott, L. C. J. observed, " I take it to be a general rule, that an act, unlawful in itself and injurious to another, is considered, both in law and reason, to be done maliciously toward the person injured, and this is all that is meant in a declaration of this sort, which is introduced rather to exclude the supposition that the publication had been made on some innocent occasion, than for any other purpose. (1 Starkie on Slander, p. 191, *et seq.*)

ALBANY,
Oct. 1827.

Root
v.
King.

Judge Betts, at the trial of this cause, said, "μ salice in making the publication need not be proved; it will be implied, if the charge is false."

Other cases might be cited where the same principle is recognized; but they are not necessary; as every case of an exception to the general rule admits and proves the rule itself. Those cases are exceptions, because, from the relation of the parties, the legal presumption of malice is rebutted.

The case of *Weatherston* v. *Hawkins*, (1 T. R. 110,) has been cited, to show that malice must be proved. That was an action by a servant against his former master, for charging him with fraud in giving a character of him. A verdict was taken subject to the opinion of the court.  * *Wood* for the plaintiff, stated that it is not necessary in an action for a libel to prove express malice; if it be slanderous, malice is implied. Ld. Mansfield said, "I have held more than once that an action will not lie by a servant against his former master, for words spoken by him in giving a character of the servant. The general rules are laid down as Mr. Wood has stated; but to every libel there may be a necessary and implied justification from the occasion." Buller, justice, said, "This is an exception to the general rule, on account of the occasion of writing the letter. Then it is incumbent on the plaintiff to prove the falsehood of it; and in actions of this kind, unless he can prove the words to be malicious as well as false, they are not actionable."

The case of *Rodgers* v. *Clifton*, (3 B. & P. 587,) contains the same principle.

There are other relations between parties in which malice is not implied from the falsity of the charge; as when it is made in the exercise of church discipline, (3 John. 183;) or in the course of legal or judicial proceedings; (3 Esp. Rep. 32;) or where an application is made to the proper authority for redress of grievances, or for the removal of an officer, to the person or persons possessing the power of removal. (4 Serg. & Rawle, 420. *Thorn* v. *Blanchard*, 5

John. 508.) In these cases express malice must be proved, or no action lies.

Is the case now before us an exception from the general rule? It is contended on behalf of the defendants, that, as the plaintiff was a public officer, and a candidate for a re-election, this case comes within the principle of *Thorn* v. *Blanchard*, (5 John. 508.) I fully subscribe to the doctrine of Ch. J. Parsons, (4 Mass. Rep. 169,) that when any man shall become a candidate for an elective office, he puts his character in issue in respect to his fitness and qualifications for the office; that publications of the truth on that subject, are not libelous; and that the publication of falsehood against public officers or candidates deserves punishment.

*I know of no decision which goes the length of justifying unbounded slander on such occasions. The case is not new in this court; and we are, therefore, not without precedent to guide us. *Lewis* v. *Few*, (5 John. 1,) is analogous. The plaintiff was a candidate for the office of governor; and the defendant was chairman of a political meeting, whose proceedings were published, and contained libelous charges. It was there contended that the truth or falsehood was not the criterion of liability; but malice; and that should be proved. Thompson, justice, says, " It has not been pretended but that the address in question would be libelous, if considered as the act of an individual; but its being the act of a public meeting of which the defendant was a member, and the publication being against a candidate for a public office, have been strenuously urged as affording a complete justification. The doctrine contended for by the defendants' counsel results in the position, that every publication ushered forth under the sanction of a public political meeting, against a candidate for an elective office, is beyond the reach of legal enquiry. To such a proposition I can never yield my assent. It would, in my judgment, be a monstrous doctrine, to establish, that when a man becomes a candidate for an elective office, he thereby gives to others a right to accuse him of any imaginable crimes with impunity. If a man has committed

[*627]

a crime, any one has a right to charge him with it, and is not responsible for the accusation : and can any one wish for more latitude than this ?"

In *Harwood* v. *Astley*, (4 B. & P. 47,) Ch. J. Mansfield says, " It would be a strange doctrine indeed, that when a man stands for the most honorable situation in the country, any person may accuse him of any imaginable crime with impunity."

The case of *Lewis* v. *Few* was decided after that of *Thorn* v. *Blanchard*, which was cited on the argument. The two cases were, of course, supposed not to depend on the same principle, or the decision in *Lewis* v. *Few* would have been different.

[*628]

*It has been contended that indulgence should be shown to the defendants as conductors of a press, whose duty it is to communicate to their readers what passes in the legislature ; but their relation to the public is one which takes their case out of the general rule ; and imposes proof of express malice on the plaintiff. Their right to publish the truth is not questioned ; but it is denied that, in the capacity of editors of a newspaper, they have any other rights than such as are common to all. The liberty of the press will not be invaded by requiring the conductors of our presses to stand responsible for the truth of what they publish. "The liberty of the press," said Lord Mansfield, " consists in printing without any previous license, subject to the consequence of law. The licentiousness of the press is Pandora's box, the source of every evil."

The language of Van Buren, senator, (11 John. 594,) in reference to what should constitute a libel, seems to me emphatically appropriate to the doctrine of the defendants' counsel : " Such a doctrine, added to the acknowledged licentiousness of the press, would form a rampart, from behind which the blackest scurrility and the most odious criminations might be hurled on private character with impunity ; and would, indeed, render the press both a public and private curse instead of a public blessing."

It seems to me, therefore, that the judge rightly instructed the jury, when he said that malice was implied and in-

ferrible from the libelous character of the publication, and
from its falsity.

He informed the jury that if the charge was true, that was a complete justification. The question as to its truth upon the evidence, was fairly submitted to their consideration. The jury have, by their verdict, disallowed the justification. On that topic something will be said hereafter. At present it is proper to inquire,

2. Whether the law was correctly stated to the jury on the question of mitigating the damages. And first, as to the reports at Albany. It would be a sufficient answer to the defendants, to say that they did not rely upon reports. They did not pretend to give their readers the substance of [*629] reports which were in circulation respecting the plaintiff. *They say, we state what we saw. Nor was it pretended that the publication was in fact based upon any such reports.

But for myself, I deny altogether the propriety of such evidence after the defendants had made an unsuccessful attempt at justification. The defendants publish a gross libel upon the plaintiff; and upon being prosecuted, they do not shelter themselves under any reports or misinformation. They do not then seek to offer an excuse for an acknowledged injury. They come boldly into court, and place the libel upon record; where it must ever remain, a conspicuous and indelible charge against the plaintiff. They thus re-publish it in the most formal and solemn manner. They assume by this course of defence, an additional liability; and such a defence, when unsuccessful, has always been considered good ground for enhancing damages. I have had occasion in a former cause, to cite what seems to me the unanswerable argument of the late chief justice Parsons on this question; (5 Cowen, 499, 500;) and which I shall therefore not repeat here. The precise point was decided by this court; and subsequent examination has convinced me of the soundness of that decision.

The case of *Larned* v. *Buffinton,* (3 Mass. Rep. 546,) has been cited on behalf of the defendants, which shows that the plaintiff's condition and manner of life, and his charac-

ter for fair dealing may be given in evidence, under a plea of justification, in mitigation of damages. It was so decided in that case, by the court of Massachusetts, upon the reason given by Parsons, Ch. J., which was, that his rank and general character are in issue, and a knowledge of it may be necessary to a just assessment of damages. In the same opinion he proceeds to state that certain evidence may be received in mitigation under the general issue, which ought to be rejected under a plea of justification; as that words were spoken from passion, and *not maliciously or through mistake. But if the defendant, when called upon to answer in a court of law, will deliberately declare that the words are true, he precludes all attempt to mitigate the damages from any of those facts and circumstances; because his plea of justification is inconsistent with them. He further stated, that under such a plea, if through the fault of the plaintiff, the defendant, at the time of speaking the words, and also at the time of pleading, had good cause to believe they were true, that should be received in mitigation. This doctrine was uncalled for by anything in the case; and has since been expressly disavowed by the same court, unless the defendant will admit that he was mistaken, and thus afford all the relief he can against the calumny which he has published. *Alderman* v. *French*, 1 Pick. 1, 19. In this case, that respectable court reiterate the doctrine laid down in *Wolcott* v. *Hall*, (6 Mass. Rep. 518;) and deny the authority of the cases of *Leicester* v. *Walter*, (2 Campb. 251,) and ———— v. *Moor*, (1 M. & S. 284.) The same question came again before that court in *Bodwell* v. *Swan*, (3 Pick. 376.) Parker, Ch. J., refers to *Alderman* v. *French*; and adds, that such evidence would answer all the purposes of the defendant, without exposing him to the consequences of attempting to justify, and failing in the attempt. Besides, the plaintiff would have no notice. The defendants in such case ought to be ready to take the ground openly, that what they have said is true; or they should be ready to discharge themselves of malice under the general issue, in some of the ways which have been allowed as legitimate grounds of defence. As to rumors, it is added,

[*630]

these very stories may have originated in slander; and character could not be protected, if the third or fourth circulator should be able to defend himself, or reduce the damages because he only gave more publicity, and added the weight of his character to calumny which had been originated by others. The rule is admitted, that the general character may be attacked; because that is relied upon as the ground of damages; and the plaintiff is supposed *at all times to be prepared to sustain his general character; but not to disprove, without notice, particular facts.

[*631]

It is true, indeed, that in the case of ——— v. *Moor*, (1 M. & S. 284,) the defendant was allowed to cross-examine the plaintiff's witnesses, as to reports of the same nature with the slander. This was done expressly upon the authority of *Leicester* v. *Walter*, (2 Campb. 251.) In that case such evidence was admitted upon the plea of not guilty. Mansfield, Ch. Justice, declared then that he could not answer the arguments against it; but it had been decided that if you do not justify, you may give in evidence anything except the truth of the charge, in mitigation. He did not cite any case. He also relied on the averment in the declaration that the plaintiff had always maintained a good character.

It appears, however, that the English courts intended to confine the rule to cases where there had been no attempt to justify. In *Snowdon* v. *Smith*, (1 M. & S. 286, note (a),) the defendant pleaded a justification. Chambre, justice, would not permit any evidence of reports such as were allowed in other cases. *Leicester* v. *Walter* was cited; but he held that it did not govern the case before him, where the defendant by his plea had put the issue upon the truth of the charge imputed. The distinction taken by Mr. Justice Chambre, is perhaps the true one, between those cases in which circumstances may be given in evidence in mitigation, and those in which they will be rejected. It is certainly the only one upon which the various cases can be reconciled.

The question as to what facts and circumstances operate in mitigation of damages under the general issue alone, is

[*632]

not free from difficulty ; because courts are not uniform in their doctrines on the subject; and different cases admit of different considerations. It seems to have been the rule once, that the truth might be given in evidence upon the general issue, in mitigation of damages. Bull. N. P. 9. In *Smithies* v. *Harrison*, (1 Ld. Raym. 727,) the words imported a charge of adultery with Jane at Stile. Holt, Ch. J., ruled that the defendant might, in mitigation of damages,*give evidence that the plaintiff committed adultery with Jane at Stile; but not with any other woman. This was so ruled at *nisi prius* about 1701. It is to be presumed that the practice was not uniform; for in *Underwood* v. *Parks*, (Str. 1200, A. D. 1744,) Ch. J. Lee refused the evidence, saying that at a meeting of all the judges upon a case that arose in the common pleas, a large majority of them had determined not to allow it for the future; but that it should be pleaded, whereby the plaintiff might be prepared to defend himself, as well as to prove the speaking of the words; that the rule extended to all sorts of words; and not barely to such as imported a charge of felony. Such is the rule in this court. 14 John. 233. In *Shepard* v. *Merrill*, (13 John. 477,) Spencer, justice, says, no principle is better established, than that the truth of slanderous words cannot be given in evidence under the general issue, either as a defence, or in mitigation of damages. In that case, the defendant had offered, in an action for words imputing theft, to prove suspicious circumstances in relation to the charge complained of; but the evidence was rejected.

At present, the rule in England seems to be, that, in actions for words, the defendant may give, in mitigation of damages, any evidence short of such as would be a complete defence to the action, had a justification been pleaded. Starkie on Slander, 406.[1] He may also give evidence of the plaintiff's general bad character in mitigation of damages. 1 Ph. Ev. 146, and cases there cited. The same

[1] See *Warmouth and wife* v. *Cramer*, 3 Wendell, 395; *Gilman* v. *Lowell*, 8 Wendell, 573; *Purple* v. *Horton*, 13 Wendell, 9; *Mapes* v. *Weeks*, 4 Wend. 662; *Bodwell* v. *Swan*, 3 Pickering, 377; *Theat* v. *Browning*, 4 Conn. Rep. 14; *Cheatwood* v. *Mayo*, 5 Munford, 16.

rule prevails here as to general character. (2 Cowen, 813, 814.) This is upon the principle that a person of disparaged fame, is not entitled to the same measure of damages as another, whose character is unblemished. It is remarked, (1 Ph. Ev. 147,) on the authority of *Snowdon* v. *Smith*, that such evidence is not admissible where the defendant, by his plea, puts in issue the truth of the charge imputed. But by a *nisi prius* case, *Kirkman* v. *Oxley*, mentioned in note 4, to that page, it seems that bad character generally may be shown under any state of pleadings ; I presume, however, no circumstances of *suspicion against the plaintiff as to the particular slander, except under the general issue only.

After a careful examination of the authorities cited, and many others, I concur perfectly with Mr. Anthon, as far as he goes, in his note to the case of *Else* v. *Ferris*, (Anthon's N. P. 25, note(c.) The action is founded in actual or presumed loss of the plaintiff, arising from the malicious publication of the defendant. If the charge made by the defendant is true, however malicious, no action lies. Upon an indictment, indeed, the defendant should show that the publication was made from good motives and for justifiable ends ; but in a private action at the suit of the party aggrieved, I consider the motives to be out of the question. When the publication is libelous, the plaintiff need not show either actual damage to himself, or express malice in the defendant. Both are necessary presumptions. The defendant must then justify or excuse the publication, or a recovery must be had against him. He may show in evidence, under the general issue, by way of excuse, anything short of a justification, which does not necessarily imply the truth of the charge, or tend to prove it true ; but which repels the presumption of malice arising from the fact of publication. And, under any circumstances, he may show that the plaintiff's reputation has sustained no injury, because he had no reputation to lose. When a defendant undertakes to justify because the publication is true, the plea, or, which is the same thing, a notice of justification, is a re-publication of the libel. It is an admission of the malicious intent with which the publication was

ALBANY,
Oct. 1827.

Root
v.
King.

[*633]

ALBANY,
Oct. 1827.
───────
Root
v.
King.

[*634]

first made.  Hence it is the uniform practice of this court not to allow such a plea to be withdrawn, without an affidavit of its falsity to be put upon the record : And upon the trial, the jury are instructed, that if the plea is false, it is an aggravation of the offence, and calls for enhanced damages,  Such a state of the case, and such an instruction to the jury, is totally inconsistent with the idea of mitigation resting upon the absence of malice.  That is confessed upon the record.  When, however, the defendant does not, by the pleadings, admit the malice, then he *may excuse his conduct by showing such circumstances as disprove a malicious intent.  A variety of instances are given in the books.  But as, under the general issue, the truth cannot be given in evidence, either in justification, or in mitigation of damages, it seems to follow upon principle, that circumstances tending to prove the truth are equally inadmissible.  There is an inconsistency in admitting weak evidence, and excluding that which is conclusive.  Beside, as to want of notice ; the plaintiff must be equally surprised by having his guilt proven by suspicious circumstances, as by positive proof.

Evidence of the plaintiff's general character is proper, because, whether the defendant has acted maliciously or not, can make no difference, in point of injury, to a character that is so bad, as to be incapable of receiving injury.

Such, I think, are the conclusions to be drawn from adjudged cases and approved principles : and if warrantable, they will aid us in rightly determining upon the correctness of the judge in his directions to the jury.  He told them that the defendant might not give evidence of general character, as to temperance, in mitigation, unless of the same quality and degree charged in the libel.

The defendants had published an outrageous libel upon the plaintiff, if false.  When prosecuted, they do not disavow the malice, and claim exemption from damages by bringing themselves within some of the exceptions to the general rule as to the implication of malice.  They come into court ; and, when they may be supposed to have ascertained whether they were mistaken in the first publica

tion, deliberately assert upon record that the publication is true; and that the plaintiff was frequently intoxicated when presiding in the senate. So far then from disclaiming malice, they virtually admit it in the face of the court. They are clearly excluded, therefore, from the benefit of any defence based upon the absence of malice. If the evidence offered, of general intemperance, was to operate in favor of the defendants, by raising a presumption that the plaintiff was actually in the situation described in the libel, then it was clearly improper. The justification must *be as broad as the charge. If the evidence was offered in mitigation, to repel the presumption of malice, then they were not entitled to it, because they had admitted the malicious intent by the notice. The evidence then could have no possible legal effect, unless it was to show the plaintiff's general bad character. His general character was in issue; and to that should the evidence have been pointed; not to any foibles, or failings or vices, which may derogate from a good general moral character. The plaintiff had courted an investigation into his general character; which had been declined; and, of course, that was admitted to be good. The general character should form the subject of examination. The character of the plaintiff comes in collaterally. It is not distinctly put in issue. To confine the inquiry to the particular character of the party, in the capacity in which he has been libeled, would be, in some measure, infringing on the well settled rule, that under the general issue, the truth of the words cannot be given in evidence in mitigation of damages. (Per Thompson, J., in *Foot* v. *Tracy*, 1 John. 45.) The plaintiff's character at large, or in gross, if I may be allowed the expression, was in issue; and as such might be attacked: but not in detail; as by showing it defective in some particulars. As an attack upon the general character, it would be equally improper to prove the plaintiff intemperate in the use of spirituous liquors, as to show that he was in the habit of playing cards, or libidinous, or was reputed a liar or the devotee of any particular vice. The question to the witness should be, what is the plaintiff's general character?

ALBANY,
Oct. 1827.

Root
v.
King.

[*635]

VOL. VII.                      45

If the witness says it is bad, the defendant has attained his object. Should the plaintiff call on the witness to specify the grounds of his opinion, he would have a right so to do : but it can never be permitted to the defendant, to prove the plaintiff's character bad by attacking it in detail or by piece meal. That would be like proving particular facts against a witness whose character is in issue. This is never allowed.

In no point of view, therefore, was the testimony admissible under the pleadings, even without the qualification *of the judge. Had such evidence been offered under the general issue alone, with a view to show the court and jury that there was no malice in the defendants, because in reality they only repeated what every one else did, and what the plaintiff's conduct led them to believe was the truth, a very different question would have been presented. They would then have brought themselves within some of the recent English cases; which now have no direct application to this case, because the question arose under a totally different state of the pleadings.

[*636]

3. As to the receiving of improper testimony, I think there was none. The journals were shown to have been printed by the printer to the state, and to have been laid upon the tables of members, where any error would probably have been corrected. They were proved by the clerk. This was certainly, *prima facie*, enough. A printed copy of public documents, transmitted to congress by the president of the United States, and printed by the printer to congress, has been holden to be admissible as evidence.

As to the rejection of proper testimony ; that is necessarily negatived in the view which I have taken relative to the admissibility of reports and character.

4. Was the verdict against evidence ? Whether the libel was true or not, was the question before the jury. The evidence was contradictory. It was the province of the jury to weigh it ; and the court ought not to set aside the verdict unless in a clear case.

5. Are the damages excessive ? In the case of *Tillotson* v. *Cheetham*, (2 John. 63,) the recovery was $1400 in favor

ot the secretary of state, against a printer, for a libel imputing to him corrupt conduct. The court said, "We cannot interfere on account of the damages. A case must be very gross, and the recovery enormous, to justify our interposition on a mere question of damages, in an action of slander." The same point was so decided in *Coleman* v. *Southwick,* (9 John. 45,) and *Southwick* v. *Stevens,* (10 John. 443) These cases were between editors and printers *of newspapers. In one the verdict was $1500 : in the other $640.

In actions for libel, and for other defamation, unless some rule of law has been violated, or there has been some improper conduct by the parties or jury, a new trial will not be granted. (3 John. 180. 9 id. 36. 15 id. 493.)

The motion for a new trial must be denied.

New trial denied.