## TAYLOR v. HEFT.

(Supreme Court, Appellate Division, First Department. May 17, 1912.)

EVIDENCE (§ 106*)—RELATIONSHIP OF PARTIES—ADMISSIBILITY.

In an action for boarding and caring for defendant's son under a claimed oral conduct, it was improper to permit defendant to testify in chief to improper relations with plaintiff covering the period of the service; the testimony not being admissible to impeach plaintiff as a witness because evidence of character is inadmissible in civil cases, except where character is at issue, and then only by proof of general reputation, and not by proof of specific occurrences.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 177–187; Dec. Dig. § 106.*]

Dowling and McLaughlin, JJ., dissenting.

---

Appeal from Trial Term, New York County.

Action by Caroline J. Taylor against Nathan H. Heft. From a judgment for plaintiff, and from an order denying a new trial, plaintiff appeals. Reversed, and new trial ordered.

See, also, 134 N. Y. Supp. 1130.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Philip Carpenter (Frank Parker Ufford, of New York City, on the brief), for appellant.

Merrill & Rogers, of New York City (Noah C. Rogers, of counsel, and Alfred H. Holbrook, on the brief), for respondent.

CLARKE, J. The complaint alleged that between April 2, 1899, and August 8, 1903, the plaintiff, at the defendant's request, furnished board and care of the defendant's son Stanley, which was reasonably worth, and for which the defendant agreed to pay, the sum of $10,400. The parties resided at Bridgeport, Conn. The plaintiff kept boarders. Stanley Heft was a young man 26 years of age. The plaintiff claimed that he was a victim of the morphine habit, and she testified to the contract upon which she sued as follows:

"He [referring to the defendant] talked at length about their not being able to do anything with him, as I well knew, and that he would not go to an institute, and that he did not know what they should do. He couldn't devote any time to him, and his mother couldn't manage him at all, and, if I would keep him and try and see what I could do, why he would pay me whatever I said was right. I certainly did not agree to take him until he had said that. After he said that, I said I would try and see what I could do. I couldn't promise anything. I would do the best I could. Nothing was said about the price. He said he would pay me whatever I thought was right. Yes; he asked me what I would charge, in the first place, and I said I didn't know, that was quite an undertaking. I couldn't say what I would charge, but I said, 'You are able to pay whatever I charge, I guess,' or something like that, and he said: 'Yes; I will pay you whatever you think is right.'"

She testified that the amount sued for was calculated upon the basis of $15 a week for board and lodging and $35 a week for personal attention; that she had not been paid anything.

This agreement was absolutely denied by the defendant. Questions of fact were presented which required submission to the jury, and we would not reverse this judgment were it not for the fact that evidence was erroneously admitted of such character that it might have had a controlling effect upon the jury in a case where the contract sued upon was verbal, asserted by the plaintiff, and flatly denied by the defendant.

The defendant was permitted, under objection and over exception, to testify that his relations with the plaintiff were improper from 1899 and so continued down to 1905, and he was permitted to go extensively into detail, and to testify specifically to a number of acts committed on various trips which he claimed to have taken with the plaintiff during those years. This testimony was irrelevant and inadmissible. The plaintiff had not been interrogated as to any of these matters upon her cross-examination, but the defendant was examined

upon them in chief. The question at issue was whether the defendant had agreed to pay the plaintiff for the board and care of his son. That his relations subsequent to such agreement with her were improper in no way tended to disprove her claim. The only possible ground for the admission of this testimony would be that it was offered by way of impeachment to prove her character such that she could not be believed. To this there are two answers: First, that evidence of character is not admissible in civil cases, except in the limited number of such cases where character itself is at issue; second, that, if admissible, it is to be proved by evidence of general reputation and not by proof of specific occurrences. "The general rule subject to some exceptions * * * is that in a civil action the character of neither party thereto, nor of any other person, is involved and it cannot be made the subject of inquiry." 5 Am. & Eng. Enc. 861. "That a person did or did not do a certain act, because his character would predispose him to do or not to do it, is an inference which, although sometimes logically probative, the English law of evidence, with some exceptions, absolutely rejects in civil cases." 16 Cyc. 1263. "In popular estimation few facts are more potent in determining the merits of any claim than the character of the respective litigants, and yet it is the general rule of law that in civil actions the character of the parties is irrelevant. * * * In civil actions for assault and battery, the defendant cannot prove his good character nor the bad repute of the plaintiff. In an action by a physician for fees, the defendant cannot attack the plaintiff's general character, nor is character relevant in actions for trespass, trover, negligence, or divorce. For still more obvious reasons the character of the parties is generally irrelevant in actions on contracts." Jones on Evidence, § 147.

In Fowler v. Ætna Fire Ins. Co., 6 Cow. 673, 16 Am. Dec. 460, a fraudulent valuation of loss at a fire was imputed to plaintiff, which involved moral perjury at least. It was held that evidence of his good character was improperly received. In Gough v. St. John, 16 Wend. 646, an action for false and fraudulent representations as to the solvency of another, evidence that defendant sustained a good character for honesty and fair dealing was held to be inadmissible. In Houghtaling v. Kilderhouse, 1 N. Y. 530, in an action for slander, after the defendant had given circumstantial evidence tending to show that the charge was true, plaintiff offered to prove that his general character was good, and the exclusion of such evidence was held proper. In Pratt v. Andrews, 4 N. Y. 493, the two foregoing cases were expressly approved. See, also, Corning v. Corning, 6 N. Y. 97.

Meyer v. Suburban Home Co., 25 Misc. Rep. 686, 55 N. Y. Supp. 566, was an action to recover for services under an alleged contract for the purpose of selling certain real estate, the answer was a general denial, and the principal question litigated was the existence of the contract of employment alleged in the complaint. Mr. Justice Beekman, writing for the Appellate Term, said:

"The defendant in the course of the trial called a witness for the purpose of impeaching the character, as well as the reputation for truth and veracity,

of the plaintiff. \* \* \* It has, however, been repeatedly held that bad character cannot be established by proof of isolated instances of misconduct. Root v. King, 7 Cow. 613. Indeed, the question of the general character of a party is allowable only in a few cases where character is a part of the issue. It is enough to say that this case does not come within the exception. It must be remembered that the inquiry in question was not made of the plaintiff on his cross-examination. The rule there is quite different; it being permissible to interrogate the party with respect to acts of misconduct tending to affect his character, and therefore his credibility."

After receiving this evidence of events subsequent to the making of the alleged contract attacking the character of the plaintiff, the court refused to admit testimony offered by her in rebuttal as to her reputation in the community in which she lived. This ruling was inconsistent with the admission of the evidence against her. If evidence of her good character was inadmissible, certainly the testimony of her bad character was. That the court ruled correctly in this instance emphasizes the impropriety of the former ruling. In his charge to the jury the learned court said:

"He told you as I said at the outset, how his acquaintanceship began, and he related to you the various occurrences. It is in the case, but it does not bear upon the material questions which I have already called your attention to, whether he could have testified to the facts or not, and whether ethically or morally there was justification for it is for him, but, as I stated to you, it is not to prejudice him upon the question whether the contract was made. It is in the case, and you may consider it as bearing upon the probability of his story or upon the story of Mrs. Taylor. Disbelieve it or credit it as you will, but give it no more weight than the justice of the case demands, because the question always is, Was this promise made, or was this request made because of the condition of Stanley? Historically it may bear on the probabilities but it is all for you and for no one else."

We cannot avoid the conclusion that this testimony was extremely harmful and presented to the jury an improper collateral issue, which, under the circumstances of this case, might well have determined the verdict.

Without considering any of the other matters presented, we think the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

INGRAHAM, P. J., and SCOTT, J., concur.

DOWLING, J. I dissent upon the ground that, where the issue is the making of a contract involving the rendering of services upon one side and payment therefor upon the other, testimony as to the relationship of the parties, by consanguinity or otherwise, is relevant to that issue, as bearing upon the probability of the making of the contract alleged; and particularly is that so where the contract is so unusual as the one here sued on, being for the care and treatment of a victim of the morphine habit by one without experience, training, or special ability to render such services.

McLAUGHLIN, J., concurs.