Bailey *v.* Moore et al.

Peak, one of the defendants below, now brings the case to this court by writ of error, assigning as errors:

That the guardian *ad litem* withdrew pleas filed by him, and agreed to a judgment against his ward.

That the court below suffered the guardian *ad litem* of plaintiff in error, to withdraw pleas that had been filed, and to agree to a judgment against him, said plaintiff in error.

D. A. AND T. W. SMITH, for Plaintiff in Error.

THORPE & TUPPER, for Defendant in Error.

---

JOHN C. BAILEY, Appellant, *v.* JOSHUA A. MOORE and IRA Y. MUNN, Appellees.

APPEAL FROM MORGAN.

A certificate of discharge, in bankruptcy, is a release of the bankrupt from liability on his covenants in a warranty deed.

In 1836, A. conveyed premises to B. by a warranty deed; in 1838, A. was in possession of the premises by his tenant, C.; in 1839, C. took another lease of the same premises from D., who held a hostile title, and was forced to pay rent to D.; in 1843, the premises being unoccupied, D.'s grantee took possession of them. In an action by B. against A., on his covenant of warranty, it is held that the attornment by A.'s tenant to D. in 1839, was not an eviction, and that the cause of action did not accrue until 1843.

A tenant has a right to attorn to one who has acquired his landlord's title, but not to one who has acquired a title hostile to the landlord; although it may be a better title.

THIS was an action of covenant brought by John C. Bailey, against Joshua Moore and Ira Y. Munn, upon a general covenant of warranty in a deed of conveyance in fee of Lots 19, 20, 21, 22, 23, 24, in block No. 4, in Collins' Addition to the town of Naples. The deed was executed to Bailey by said Moore and Munn, and by Charles Collins and his wife, on the 1st day of September, 1836.

The declaration is in the usual form in such cases, averring the death of Collins before the suit, and averring that said Collins' Addition to Naples, was laid out upon the east half of the north-east quarter of section 13, in township 15 north, and range 14 west of the 3rd principal Meridian of Illinois, and assigning, as a breach of the covenant, that one Catharine Lynch, on the 7th of March, 1843, entered upon the premises described in the deed, and upon the land on which said lots were laid out and located, (having paramount and better title to the same, not derived from said plaintiff, Bailey,) and ejected and expelled the said Bailey from the same, and that said Catharine, and persons claiming under her, have from that time to the present, withheld possession of said premises from said Bailey.

By stipulation of counsel, the defendants were to file the plea of " Non est factum," and under that plea, they might jointly or severally give in evidence any matter of defense that would be good if specially pleaded—joint defense, statute of limitations—several defense of Ira Y. Munn, that he was discharged and certificated as a bankrupt by the District Court of the U. S. for Illinois, on the 7th February, 1843, under the act of Congress of August 19th, 1841.

The cause was tried by the court, WOODSON, Judge, without a jury, upon the following evidence, and the written stipulation of counsel, to admit the following facts as proven:

1st. That the east half of the north-east quarter of section 13, in township 15 north, range 14 west of the 3rd principal meridian in Illinois, was patented by United States to Isaac Keyes, on the 21st of January, 1829.

2nd.   That said Keyes conveyed said land in fee simple, by deed with warranty to Patrick Lynch, September 16th, 1831.

3rd.   That said Lynch conveyed said land in fee simple, by deed with warranty to Charles Collins, April 18th, 1836.

4th.   That said Collins conveyed in fee simple, by deed with warranty, one undivided third of said land to each of said defendants, Moore and Munn, on the 4th of June, 1836 ; reciting and stating in both said deeds, that said tract of land is situated immediately adjoining the old town of Naples, and includes Charles Collins' Addition to said town, and being the same land bought by said Collins of Patrick Lynch.

5th.   That in the year 1835, and before said Lynch conveyed to Collins, three judgments were obtained against Lynch, which were liens upon the land when sold by him to Collins.   Executions upon these judgments were levied upon said land and the same sold on the 23d of January, 1836, to Amos Bonesteel, and the land not being redeemed, Bonesteel obtained a sheriff's deed on the 2nd July, 1839, and thereby acquired the title in fee.

6th.   Said Charles Collins was, during the year 1838, by his tenant, William Dunbar, who occupied and cultivated the same, in possession of said land; and Dunbar continued to occupy and cultivate the same until the 1st March, 1840.   In February, 1839, said Bonesteel and Dunbar executed a sealed lease of said land for one year for $100 rent, payable by Dunbur to Bonesteel the 1st February, 1840.   Bonesteel sued Dunbar for said rent, and obtained judgment at the October term, 1840, of the Scott Circuit Court, which was affirmed by the Supreme Court, (see 3 Scam. R. 32.)   The pleadings in said case are admitted to be as recited in the opinion of the court.

7th.   Catharine Lynch acquired title in fee simple to said land, from said Bonesteel and his mortgagees, on the 7th of March, 1843, by deed of that date, made in pursuance of a decree in chancery, and was on that day in actual possession of said land, claiming title to the same, and she and her grantees in fee have continued in possession, claiming title, to the present time.

8th.   Patrick Lynch died in the fore part of the year 1837— said Charles Collins died in the year 1849.

9th.   The plaintiff, Bailey, never was in actual possession of the premises conveyed to him by Moore, Munn and Collins, as above stated ; nor was he ever in actual possession of any part of the east half, north-east quarter, section 13, township 15 north, range 14 west, above mentioned.

10th.   The defendant, Munn, obtained a certificate of discharge in bankruptcy, by the District Court, U. S. for Illinois,

on the 7th of February, 1843, under the act of Congress of August 19th, 1841, upon his petition filed July 6th, 1842.

11th.   Said Charles Collins and his wife Adeline, (the latter relinquishing her dower therein,) and defendants, Moore and Munn, on the first day of September, 1836, executed and delivered to the plaintiff in this suit, the deed with covenant of warranty, which is the foundation of this suit.

12th.   All the aforesaid deeds and conveyances were, at their dates, duly acknowledged and recorded in the counties where said town lots and land were then situated.

The plaintiff, Bailey, also offered in evidence the deed in his declaration mentioned, and the following receipt, which was admitted to have been signed by Charles Collins, one of the grantors of the plaintiff:

"Received, Naples, February 22nd, 1840, of William Dunbar, one hundred dollars in full for rent of the Lynch farm for 1839.

CHARLES COLLINS."

The plaintiff then proved by *Holloway W. Vansyckle*, that witness resided in the town of Naples, from some time in the year 1836 up to 1850; that witness was well acquainted with Charles Collins and William Dunbar; that said Dunbar occupied and cultivated the east half of the north-east quarter of section 13, in township 15 north, range 14 west of third principal meridian in Illinois, (commonly called the Lynch tract or farm,) during the years 1838 and 1839, and to the Spring of 1840; that witness saw Collins and Dunbar frequently during the years 1838 and 1839, and understood from both of them in conversation had with them during those years, that said Dunbar was occupying said land as the tenant of said Collins; that said land lies in the immediate vicinity of Naples, and witness knows that Dunbar boarded a number of hands for Collins in the year 1838; that witness never knew nor heard that Amos Bonesteel claimed to be the landlord of said Dunbar, or to be entitled to the rent of said land for the year 1839, until after the trial between Bonesteel and Dunbar, at the October term of the Scott Circuit Court, 1840; that the prices of lots in Collins' Addition to Naples, on the 1st of September, 1836, varied from fifty to seventy-five dollars each.   Witness also stated, upon his cross-examination, that he had no personal knowledge of the lease or contract between Collins and Dunbar, respecting the rent of aforesaid premises.

The plaintiff also proved by *George M. Richards,* that he resided in the town of Naples from some time in the Spring of 1837, to some time in the Spring of 1839, when witness removed about eight miles from there, but was afterwards often at Naples.   Witness was well acquainted with Charles Collins and

William Dunbar, and knows that said Dunbar occupied and cultivated the east half of the north-east quarter, section 13, township 15 north, range 14 west of the third principal meridian in Illinois, (commonly called the Lynch tract or farm,) during the years 1838 and 1839, and to the Spring of 1840; that said tract of land lies in the immediate vicinity of Naples, and witness understood from both said Collins and Dunbar, in conversations had with them in the years 1838 and 1839, that said Dunbar was occupying said land as the tenant of said Collins, and witness some time in the Spring of 1839, went on to the aforesaid premises, and obtained from Dunbar for said Collins, some corn towards the rent due Collins for the year 1838. Witness knows that Collins had a number of hands boarded at Dunbar's in the year 1838. Witness never heard or knew of Amos Bonesteel claiming, or having anything to do with the rent of said land for the year 1839, except that said Dunbar, in a conversation with witness, sometime in the latter part of 1839, said he didn't know but he had got himself into a snap; he had promised to pay rent to both Collins and Bonesteel, and he reckoned he would have to pay rent to both of them. Witness stated that the prices of lots in Collins' Addition to Naples, varied in 1837 from fifty to seventy-five dollars each. Witness stated, on his cross-examination, that he had no personal knowledge of any lease from Collins to Dunbar, for said premises.

Plaintiff then proved that defendants, Moore and Munn, and said Charles Collins, sold, on the 1st of September, 1836, a number of lots in block four, of Collins' Addition to Naples, for seventy-five dollars each.

Plaintiff also proved that defendant, Moore, was the security for said Dunbar, on the appeal bond for appealing the case of *Bonesteel* v. *Dunbar*, for the rent of above land for 1839, from the Scott Circuit Court to the Supreme Court, and decided by the latter at the July term, 1841.

Upon the foregoing evidence the Circuit Court found for the defendants, and judgment was therefore rendered that the plaintiff take nothing by his suit, and that the defendants recover of the plaintiff their costs therein expended; from which judgment the plaintiff appealed to this court.

STRYKER & McCLURE, for Appellant.

D. A. AND T. W. SMITH, for Appellees.

CATON, C. J. The certificate of discharge by the court in bankruptcy was a release of Munn from his liability upon this covenant. *Bates* v. *West*, 19 Ill. R. 134. The only remaining question in this case, not settled by the decision in *Moore* v.

*Dodd,* 17 Ill. R. 185, is, whether the lease which Dunbar took of Bonesteel constituted an eviction of the grantees in the deed, and was a breach of the covenant of warranty. This lease was executed in February, 1839, at which time Dunbar was in possession of the premises, under a lease from and as tenant of Collins, one of the grantors in that deed. By taking the lease from Bonesteel, Dunbar could not discharge himself from his obligations as the tenant of Collins, and thrust Collins out of the possession of the premises, unless he had a right to attorn to Bonesteel. The tenant had only a right to attorn to one who had acquired the title of his landlord; he had no right to attorn to one who had acquired an outstanding title hostile to that of his landlord, although it might be a better title. But admitting that the tenant had a right to attorn to Bonesteel, and renounce Collins as his landlord, after Bonesteel received his sheriff's deed, until that time he had no such right, for Bonesteel had no title, and he was in law as much a stranger to the premises as if he had not purchased them at the sheriff's sale. That deed was not executed until July, 1839, five months after the execution of the lease. When he took the lease of Bonesteel, he could do no act to the prejudice of Collins, his landlord, nor does it appear that he ever attempted to avoid the payment of rent to Collins. The truth is, no doubt, that he paid rent to both, for this court held in 3 Scam. R. 34, that having taken a lease of Bonesteel and agreed to pay him rent, he was bound to do so, and that he should not be permitted to say that he had no authority to lease the premises, although he might also have to pay rent to Collins for the same premises and the same term. It was his own folly if he agreed to pay rent twice. Certain it is, that by the well settled rules of law, Collins was not ousted of his possession by this lease. The law would have protected him and Bailey his grantee in that possession, until Bonesteel should turn them off by an action of ejectment. Afterwards it is true they voluntarily abandoned the possession and left the premises vacant, in which condition they remained till Mrs. Lynch took possession in 1843. If Collins was in a position to maintain his possession, and insist that the occupancy by Dunbar was in law his possession, he could not, if now living, be permitted to say that he was ousted of that possession and evicted from the premises, when by so doing, he could interpose the statute of limitations to defeat a recovery for a breach of his covenant of warranty; nor can the other parties who joined with him in the execution of the deed. We are of opinion there was no eviction till 1843, and consequently till that time, there was no breach of the covenant, and till then, the cause of action did not accrue.

The judgment is reversed and cause remanded.

*Judgment reversed.*