ELLEN O'DONNELL, RESPONDENT, v. ROBERT McINTYRE, APPELLANT.

*Attornment by a tenant to a stranger — when void as to the landlord — 1 R. S., 744, sec. 3.*

The plaintiff, in 1880, leased a house belonging to her to one Bates. In 1880 the premises were sold, and in 1882 were conveyed, to the defendant for non-payment of taxes, and in February, 1883, his title thereto was perfected. In April, 1883, the defendant went to the premises, notified Bates, the tenant, of his, defendant's, title, and demanded possession of the premises, whereupon the tenant delivered to him the keys of the house and agreed to become the defendant's tenant and pay him rent therefor.

Upon the trial of this action, brought to recover damages for an assault and battery committed by the defendant upon the plaintiff on the said premises, the question as to which party was in possession arose.

*Held*, that the attornment of the tenant to the defendant was void, and that the plaintiff's possession was not in any way affected thereby.

APPEAL by the defendant from a judgment, entered on a verdict rendered at the Monroe Circuit, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages for an assault and battery. Both parties claimed possession of a house in the city of Rochester. The alleged assault arose from an effort, and force used, to eject the plaintiff from the house. The plaintiff recovered $1,000.

*J. A. Stull*, for the appellant.

*John R. Fanning*, for the respondent.

BRADLEY, J.:

There is evidence tending to prove, and it was assumed at the trial, that the plaintiff, having title to the house and lot, leased the premises to one Bates, who went into possession as her tenant and paid rent to her; that afterwards, in August, 1880, they were sold for taxes assessed to one Mary Horrigan; that in August, 1882, a deed pursuant to such sale was made to the defendant in terms conveying the premises to him, and that his title under such conveyance was perfected in February, 1883, as provided by Laws of 1877 (chap. 104; Laws of 1880, chap. 127). On 2d April, 1883, the defendant went to the premises, advised the tenant of the deed and demanded the possession of him, made arrangement with the latter to deliver to the defendant the keys of the house, and that the tenant should become his tenant, and pay him the rent thereafter.

The defendant having taken away some of the keys, the plaintiff went to the house on the 5th April with a locksmith to put new locks on the doors and went into the house, when the defendant came there and endeavored by force to remove the plaintiff from the house, but did not succeed. The evidence on her part tended to prove that the defendant used much force in his attack upon the plaintiff to remove her on her refusal to leave the house, and, violently struck and kicked her, and that her injuries received were serious; while his testimony was quite different in respect to the extent of force used.

The question of possession was an important one. If the

defendant did not have the actual possession of the premises he was not justified in the application of any force to remove the plaintiff from the house. The trial court held that he did not have possession of the premises, that the cause of action was established and that the question was one of amount of damages only.

On the part of the defense it is contended that the defendant having the title to the premises could, and by the arrangement with the tenant did effectually obtain the attornment of the latter to him and the relation of landlord and tenant was accomplished, and that such relation between the plaintiff and the tenant was terminated. And as a consequence the plaintiff was a trespasser and the defendant had the right to use the requisite force to remove her from the house on her refusal to leave it. And thus is presented the main question in this case.

It was at the trial and is here assumed that the defendant had the legal title by virtue of the tax deed. But that did not enable him and the tenant of the plaintiff, without the consent of the latter, by mere agreement between them to that effect during the term, to produce attornment of the tenant to him and take from her the relation of landlord.

The matter of attornment had its origin in the feudal system, and is as old as the laws regulating tenure of real property. And the restriction was alike on the landlord and the tenant so that neither without the consent of the other was permitted to substitute another in his place by grant or assignment of the reversion or term. That was founded in the system, and for the reason that the obligation of the lord and vassal was that of protection and fealty and the relation was in some degree personal. (2 Bl. Com., 57, 72, 288.) The necessity for consent of the tenant (which was called attornment) to the conveyance of the reversion and to vest in the grantee the rights of the landlord in respect to the lease and term was wholly done away by statute (4 Anne C., 16, § 9) which has been made the law of this State. (1 R. S., 739, § 146; *Moffatt* v. *Smith*, 4 N. Y., 126.) So that there is no restriction upon the right to pass the reversion and all such rights by grant to another.

But attornment by a tenant to a stranger is absolutely void and cannot affect the possession of his landlord unless made with his consent or pursuant to, or in consequence of, a judgment at law, or

the order or decree of a court of equity, or to a mortgagee after the mortgage has become forfeited. (1 R. S., 744, § 3.)

The defendant was a stranger within the meaning of the statute. The title which he asserted, and had, was hostile to that which the plaintiff had when the tenancy was created. The case is different when the estate of the landlord is a limited one and terminates after the commencement of the term of the tenant, or if the landlord's estate or title has been extinguished or transferred by sale pursuant to decree or legal process; then the rights of the ratter and his relation to the tenant for all practical purposes pass to the successor to the estate, or to the owner of the reversion thus acquired. (*Jackson* v. *Rowland*, 6 Wend., 666–670; *Jackson* v. *Davis*, 5 Cow., 124–135; *Niles* v. *Ransford*, 1 Mich., 338; 51 Am. Dec., 95; *Hoag* v. *Hoag*, 35 N. Y., 471.)

And the tenant may become the purchaser of the reversion at a judicial or other sale, and so acquire the rights of his landlord and relieve himself from liabilty as tenant to the latter. (*Nellis* v. *Lathrop*, 22 Wend., 121; *Elliott* v. *Smith*, 23 Penn. St., 131; *Murrell* v. *Roberts*, 11 Ired. Law R., 424; 53 Am. Dec., 419; *Camley* v. *Stanfield*, 10 Tex., 546; 60 Am. Dec., 219; *Hetzel* v. *Barber*, 69 N. Y., 1.)

But while his relation of tenant, and possession as such continues, he cannot avail himself of an outstanding title (which he may purchase) to dispute the title of his landlord, nor can he then effectually attorn to the person having an outstanding title in hostility to that of his landlord. (*Bailey* v. *Moore*, 21 Ill., 165; *Lawrence* v. *Brown*, 5 N. Y., 395–405; *Kenada* v. *Gardner*, 3 Barb., 589.) He must first surrender up the premises to his landlord before assuming an attitude of hostility to the title or claim of title of the latter. (*Towne* v. *Butterfield*, 97 Mass., 105; *Miller* v. *Lang*, 99 id., 13; *Jackson* v. *Harper*, 5 Wend., 246; *Jackson* v. *Walker*, 7 Cow., 636; *George* v. *Putney*, 4 Cush., 355.)

There is, however, nothing in the way of the purchase of and taking title to an outstanding title by the tenant, which is all that was held in *Senior* v. *Marcinkowiski* (1 How. [N. S.], 331). The arrangement made with the tenant to treat the defendant as his landlord having been made without the knowledge or consent of the plaintiff, will be deemed collusive as against her and can afford no

right to the defendant. (*Stewart* v. *Roderick*, 4 Watts & Serg., 188; 39 Am. Dec., 71.)

The tenant continued in the possession up to and at the time of the occurrence in question, and the defendant had no possession in fact at that time. And the ground upon which he asserted it, was the arrangement by which he claimed the relation between the plaintiff and the tenant was terminated, and shifted so as to produce the relation of landlord and tenant between him and the latter. It may be assumed that this attempt was made during an existing term of tenancy.

There seems to be no support for the contention that the defendant was in the actual possession of the house at the time of the alleged assault. And assuming that he then had the right to possession by virtue of his deed resulting from the sale for taxes, he was not by it given any right whatever to forcibly eject the plaintiff from the premises and in that manner take possession of them. (*Parsons* v. *Brown*, 15 Barb., 590; *Bliss* v. *Johnson*, 73 N. Y., 529; *McMillan* v. *Cronin*, 75 id., 474.)

There being no question but that some force was used by the defendant, in his effort to remove the plaintiff, the cause of action was made out, and the only inquiry that remained for the jury was as to the amount of the recovery which should be given to the plaintiff. In respect to the character of the assault and of the injuries received and the extent of them, the testimony was conflicting and presented for the jury the question of credibility of witnesses which it was peculiarly within their province to determine.

We see no occasion to disturb the verdict on the merits, and none of the exceptions seem to have been well taken. The judgment and order should be affirmed.

Smith, P. J., and Barker, J., concurred.

Judgment and order affirmed.